United States Court of Appeals,

Eleventh Circuit.

No. 94-2825.

William BOATMAN;  Mary Jane Boatman, Plaintiffs-Appellees,

v.

TOWN OF OAKLAND, Florida, Defendant-Appellant.

Feb. 28, 1996.

Appeal from the United States District Court for the Middle District of Florida. (No. 92-254-CIV-ORL-18), Richard B. Kellam, Judge.

Before TJOFLAT, Chief Judge, KRAVITCH, Circuit Judge, and HILL, Senior Circuit Judge.

TJOFLAT, Chief Judge:

The dispute in this case is not grist for the mill of a United States district court;  rather, it belongs in state court.  We therefore vacate the district court's judgment and direct the court to dismiss the case for lack of subject matter jurisdiction.

I.

A.

The warring parties are the Town of Oakland, a small community in Orange County, Florida,[1] and two of its residents, William and Mary Jane Boatman.  The dispute involves the Boatmans' attempt, beginning in September 1991, to build and occupy a "manufactured home" on a lot they own in one of the Town's residential districts.[2]  After obtaining a building permit and constructing the

_____

[1]The Town of Oakland, which is located on the shore of Lake Apopka, is 255 acres in size, and, at the time this suit commenced, had a population of just over 700 persons.

[2]The Boatmans had five adjoining lots, numbered 7 through 11, on East Henshen Avenue.  Each lot measured 50 feet (along the

home, they asked the Town's building inspector to perform a final inspection so that the Town could issue them a certificate of occupancy. The inspector refused to perform the inspection. In his opinion, the Boatmans had constructed a "mobile home" in violation of a provision of the Town's zoning ordinance that prohibited the placement of mobile homes on lots in the Boatmans' residential district. Without a favorable final inspection, the Town refused to issue a certificate of occupancy.

Instead of petitioning the circuit court in Orange County for an injunctive order compelling the building inspector to perform a final inspection, the Boatmans sought refuge in the United States District Court for the Middle District of Florida. Bypassing the building inspector, they sought an injunction directing the Town to issue a certificate of occupancy and an award of money damages and attorney's fees.

Diversity of citizenship jurisdiction did not lie, because the plaintiffs and the defendant were citizens of the same state, so the Boatmans invoked the court's federal question jurisdiction, bringing a claim under 42 U.S.C. § 1983.[3] They alleged in their complaint that the Town's refusal to issue a certificate of

---

street) by 125 feet. A 100-year-old house and some out-buildings occupied by the Boatmans were on lots 7 through 9. Lot 10 was used for the manufactured home.

[3]Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983 (1988).

occupancy was "arbitrary and capricious" and thus deprived them of a "vested property right in their building permit" in violation of the Fourteenth Amendment.[4]  In responding to the Boatmans' complaint, the Town did not challenge the district court's subject matter jurisdiction or the complaint's legal sufficiency.  Instead, the Town simply denied that it had infringed any of the Boatmans' rights.

Although the relief the Boatmans sought was primarily equitable, they requested a jury trial.[5]  The Town did not object; accordingly, the court convened one.

## B.

The case was assigned to a visiting district judge for trial.  On the eve of trial, the judge grew concerned about the court's subject matter jurisdiction.  He shared his concern with counsel just prior to the *voir dire* of the venire.  The Town's attorney stated that the case did not present a federal claim—that he "did not understand why we were going to federal court with this in the

---

[4]The Boatmans also alleged that the zoning ordinance's prohibition against mobile homes that the building inspector cited in refusing to inspect their home was invalid under state law.  They alleged, alternatively, that their manufactured home was not a "mobile home" as mobile homes were defined in the ordinance.  Finally, the Boatmans alleged that the Town was equitably estopped to deny the Boatmans a certificate of occupancy.

[5]At the time the Boatmans instituted this action, in March 1992, their manufactured home was still awaiting a final inspection.  By the time the case came to trial, the manufacturer of the home had repossessed it, because without a certificate of occupancy, the Boatmans could not finance their purchase of the home.  Because equitable relief—an order requiring the inspection of the home and the issuance of a certificate of occupancy—would gain them nothing, the Boatmans were left to their claim for compensatory damages.

first place."  The Boatmans' attorney disagreed.  According to her, the provision in the zoning ordinance barring mobile homes bore no "reasonable relationship to the protection of the public health, safety, welfare, and morals."[6]  The Town's enforcement of the

_____

[6]The Boatmans did not allege this constitutional claim in their complaint.  There, as we indicate, *supra,* they alleged that the Town's refusal to issue a certificate of occupancy was "arbitrary and capricious" and thus deprived them of a "vested property right in their building permit."  In the parties' pretrial stipulation, the Boatmans, in stating their constitutional claim, said that "the Town's zoning ordinance prohibiting mobile homes had no reasonable relationship to health, safety, morals, or general welfare of the community."  They also said that the "zoning ordinance is vague and ambiguous as to the definition of "mobile home.' "  Finally, they said that "the Town's arbitrary and capricious enforcement of the ordinance deprived the plaintiffs of constitutionally protected property rights."

After contending that the case presented these constitutional claims, however, the Boatmans and the Town stated the issues of law that remained to be litigated as follows:

A. Whether the home was a "mobile home" or "manufactured home".

B. Whether the zoning ordinance was constitutionally valid.

C. Whether any provision of the zoning ordinance pertaining to mobile homes was preempted by federal or state law.

The foregoing statements as to the nature of the Boatmans' constitutional claim(s), considered in the light of what the Boatmans alleged in their complaint, are confusing at best and no doubt explain why the district court was still trying to get a handle on what the Boatmans were contending on the day the trial began.

In their supplemental brief to us, they sought to justify the ambiguous presentation of their constitutional claim(s) by relying on the notice pleading permitted by the Federal Rules of Civil Procedure:

In pleading their arbitrary and capricious due process claim, the Boatmans were required by Rule 8(a)(2) ... to provide only a "short and plain statement' that

provision was therefore arbitrary and capricious and in violation of the Boatmans' due process rights. The court decided to wait until it had heard the parties' evidence before ruling on the issue, and the trial proceeded. As it turned out, the court never revisited the question of its subject matter jurisdiction.

At the conclusion of the evidence, the parties moved the court for judgment as a matter of law. The court reserved ruling on their motions and sent the case to the jury on special interrogatories. The first interrogatory asked the jury to determine whether "the Boatmans' home was a mobile home under the Oakland zoning ordinance." The jury answered yes, and moved to the second interrogatory, which asked: "In denying the Boatmans a certificate of occupancy, was the Town of Oakland's action arbitrary and capricious, and in violation of the zoning ordinance?" The jury answered no, and thus did not move to the third interrogatory, which dealt with damages. Given these answers, the court entered judgment for the Town.[7]

---

would give the defendant fair notice of what the claim was and the grounds upon which it rested.... There is no "heightened pleading standard" in civil rights cases alleging municipal liability under § 1983.... [Their] complaint clearly met federal pleading requirements.

Concluding this argument, they said that the "allegations were clearly sufficient to place [the Town] on notice of what the Boatmans' claim was and the grounds upon which it rested." We have described the sort of pleading in which the Boatmans have engaged in this case as "shotgun" pleading. *See Pelletier v. Zweifel,* 921 F.2d 1465, 1518 (11th Cir.), *cert. denied,* 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991).

[7]The court concluded that the verdict also disposed of the Boatmans' pendant state claims; accordingly, it gave the Town judgment on those claims as well.

The Boatmans then renewed their motion for judgment. The court granted it, concluding as a matter of law that the Boatmans' manufactured home was not a mobile home within the meaning of the Town's zoning ordinance. Following this ruling, the parties agreed to let the court decide the amount of damages. After hearing evidence on that issue, the court awarded the Boatmans compensatory damages in the sum of $42,320 and attorney's fees of $36,786. The court awarded the attorney's fees under 42 U.S.C. § 1988(b), even though it had not based the Boatmans' recovery on a constitutional violation and 42 U.S.C. § 1983.[8] Following the entry of final judgment, the Town took this appeal.

II.

In concluding that the district court lacked subject matter jurisdiction over this controversy, we first consider the Town's zoning ordinance. That ordinance prohibits the use of property in the Boatmans' residential district as the site for a mobile home. A mobile home is described in the zoning ordinance as:

> A mobile living unit equipped with built-in furnishings and fixtures for use as a dwelling upon connection to outside water and electrical power. It requires no foundation and is not considered a permanent building, but is designed to be drawn by a passenger vehicle from one parking site to another where power connections are available.

The district court found that the Boatmans' home was not a mobile home within this definition. As the court observed, the Boatmans' home

was not equipped with built-in furnishings and required a

---

[8]In any action to enforce 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b) (1988 & Supp. V 1993).

permanent foundation which had been installed by [the Boatmans]. Second, the structure was considered as a permanent building, and was not designed to be drawn by a passenger vehicle from one parking site to another. After the structure had been delivered to the site, there was considerable carpentry work to be performed. For instance, siding of the structure was to be installed, as well as other substantial carpentry work. It was placed on permanent footings.

Building Inspector Nelson erred when he told the Boatmans that he would not perform a final inspection of the home because the zoning ordinance prohibited mobile homes. Faced with the inspector's interpretation of the ordinance, the Boatmans could have sought a ruling from the Town's Zoning Board of Adjustment that their structure was not a mobile home. Or, if the Zoning Board disagreed, they could have requested a variance, which the Board had the power to grant. The Boatmans knew of these options because Mrs. Boatman was a member of the Zoning Board. [9] The Boatmans eschewed these options, however, and went to the Town Council instead. They asked the Council to arrange for their home to be inspected and, if it passed inspection, to issue a certificate of occupancy. The Council referred the matter to its attorney for an opinion. He concluded that Boatmans structure was a mobile home as defined in the zoning ordinance. The Council accepted its attorney's opinion, and informed the Boatmans that a final inspection would not be made.

The Boatmans sought legal advice from a private attorney. The record, of course, does not indicate what advice the Boatmans

---

[9] The record reveals that Mrs. Boatman was a member of the Zoning Board in 1991, at the time the present controversy began. She resigned in June 1992, a few months after the Boatmans brought this suit.

received.  We do know, however, that the Boatmans did not seek relief in the Orange County circuit court.  The Boatmans concede that the circuit court could have ordered the building inspector to perform a final inspection;  that court, like the district court, could have concluded that their structure did not fall within the zoning ordinance's definition of a mobile home.  And if, after a satisfactory inspection, the Town Council nonetheless refused to issue a certificate of occupancy, the same court could have ordered the Council to do so.

As this discussion clearly demonstrates—and as the district court acknowledged—the Boatmans' claim turned solely on a question of state law:  whether their structure was a "mobile home" as defined in the Town's zoning ordinance.  Needless to say, a suit for injunctive relief in the Orange County circuit court would not have engendered anything close to the expense and delay that these proceedings have generated.[10]

Nonetheless, the Boatmans say that their claim arises under the Constitution of the United States.  According to the Boatmans, their claim has two constitutional underpinnings.  First, as their attorney informed the district court prior to the commencement of

---

[10]In a supplemental brief to us on the question of the remedies that would have been available to the Boatmans in state court, the Boatmans argue that the Orange County circuit court could not have provided them the damages relief they sought in the district court.  Their argument is disingenuous at best.  We take judicial notice that the Orange County circuit court is a court of general jurisdiction and thus had the authority to compensate the Boatmans with money damages.  *See* Fla. Const. art. V, §§ 5(b), 20(c)(3);  Fla.Stat. § 26.012(2) (Supp.1994).  Had the Boatmans repaired to the circuit court in a timely manner, however, it is likely that they would have suffered no loss—except for a brief delay in obtaining a certificate of occupancy, providing their structure passed inspection.

*voir dire,* in banning mobile homes from the Boatmans residential district, the Town exceeded its police power. Banning mobile homes, they said, bore no "reasonable relationship to the protection of the public health, safety, welfare, and morals." The Boatmans cite no constitutional or statutory provision or judicial precedent for this proposition, and we find none. They point only to the rules that the Florida Department of Community Affairs uses to determine whether a local government's comprehensive growth plan complies with state law.[11]

We see nothing in the Department's rules that could support the Boatmans' argument. It is true that the rules require local governments to include in their comprehensive growth plans various "goals," "objectives," and "policies" that address the need for mobile home sites in their communities, and that the Department urges them to provide for such sites. When, in 1990, the Town submitted its plan to the Department for approval, the plan indicated that the Town's zoning ordinance prohibited mobile homes in residential districts.[12] The Department objected to the lack of provision for mobile homes sites; it recommended that the plan

> include a specific, measurable objective based on relevant data and analysis, to provide adequate sites for housing for low and moderate income families and for mobile homes. The Town must permit mobile homes in single-family and multi-family residential areas *or it may designate land for*

----

[11]The Department of Community Affairs is the state agency charged, among other things, with approving or disapproving the comprehensive growth plans of the state's local governments.

[12]Mrs. Boatman participated in the preparation of the Town's plan. She also participated in the Town's response to the Department's objections to the plan, including the Department's recommendation, set out in the text, *infra,* concerning the need to provide for mobile homes.

*mobile home subdivisions and mobile home parks*[.]

The Town, in response, advised the Department that provisions in the plan addressed the issue. The Department accepted the Town's response and approved its plan in 1991. In view of this acceptance, it can hardly be contended that the zoning provision barring the location of a mobile home on the Boatmans' lot was beyond the Town's police power to enact.

The Boatmans contend that the second underpinning for their constitutional claim is that the Town's refusal to direct the building inspector to perform a final inspection was "arbitrary and capricious" and thus deprived them of their property without due process of law. In their supplemental brief, they describe their claim as an " "as applied' arbitrary and capricious due process claim." The Boatmans do not tell us, however, whether this claim falls within the substantive or the procedural component of the Due Process Clause of the Fourteenth Amendment.

If the claim falls under the procedural component, it is meritless because the state provided the Boatmans all the process they were due. *See, e.g., McKinney v. Pate,* 20 F.3d 1550, 1555-60 (11th Cir.1994) (en banc), *cert. denied,* --- U.S. ----, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995). The state gave them the right to repair to the Orange County circuit court; there, as we point out, *supra,* they could have sought an order compelling the building inspector to do his job.[13]

---

[13]The order could have been in the form of an injunction or a writ of mandamus. A writ would have issued if the circuit court concluded that the performance of a final inspection of a new building was a ministerial act—that is, whether the Boatmans' structure was barred by the Town's zoning ordinance was a matter

We likewise have no doubt that the claim is not cognizable under the substantive component of the clause. The notion that the Constitution gives a property owner a substantive right to a correct decision from a government official, such as the building inspector in this case, is novel indeed. According to the Boatmans, the right is triggered whenever an administrative decision is clearly mandated but the government official fails to act. In that situation, the official, in refusing to follow the clear mandate of the law and to perform what is essentially a ministerial act, would be deemed to have acted "arbitrarily and capriciously." Again, the Boatmans' theory is novel. It is frivolous, as well.

### III.

In conclusion, we find no federal constitutional claim in the case that the Boatmans presented to the district court. The court therefore lacked subject matter jurisdiction to entertain it. On receipt of our mandate, the court shall dismiss the case.

SO ORDERED.

---

for the Zoning Board, not the inspector, to decide. In any event, we have no doubt that, as we explain, *supra,* the circuit court would have decided the state law controversy before us.