**NORTH FLORIDA EDUCATIONAL DEVELOPMENT CORPORATION and Carolyn Ford, etc., Plaintiffs,**

**v.**

**William A. WOODHAM, etc., et al., Defendants.**

**No. 4:96CV81–MMP.**

United States District Court, N.D. Florida, Tallahassee Division.

May 20, 1996.

Larry K. White, Larry K. White, P.A., Tallahassee, FL, and Jack L. McLean, Jr., Williams, Haygood & McLean, Atlanta, GA, for plaintiffs.

Keith C. Tischler, Powers Quaschnick Tischler & Evans, Tallahassee, FL, John C. Cooper, James E. Messer, Jr., Cooper, Coppins & Monroe, Tallahassee, FL, Craig A. Dennis, J. Bruce Bowman, and John Alan Grant, Dennis & Bowman, Tallahassee, FL, for defendants.

## ORDER OF DISMISSAL

PAUL, Chief Judge.

This cause comes before the Court on a number of pre-trial motions, including:

(1) Motion to dismiss by Defendants GRISWOLD and JOYNER (Doc. 10)—to which Plaintiffs have responded (Doc. 25);

(2) Motion to strike claims for punitive, consequential, and incidental damages by Defendants GRISSWOLD and JOYNER (Doc. 11)—to which Plaintiffs have responded (Doc. 26);

(3) Defendant WOODHAM's motion to dismiss (Doc. 15)—to which Plaintiffs have failed to file a timely response;

(4) Defendant WOODHAM's motion to strike Plaintiffs' demand for punitive damages (Doc. 18)—to which Plaintiffs have responded (Doc. 26); and

(5) Amended motion to dismiss by Defendants GRISSWOLD and JOYNER (Doc. 24)—to which Plaintiffs have responded (Doc. 25).

For the reasons outlined below, Defendants' motions to dismiss (Docs. 10, 15 & 24) are GRANTED, thereby MOOTING the remaining motions.

## BACKGROUND:

This is a civil rights suit arising from the allegedly unconstitutional closure of a Department of Corrections ("DOC") sponsored youthful offender transition program in Quincy, Florida. Plaintiffs include the North Florida Educational Development Corporation ("NFEDC"), which ran the program in question, and Carolyn Ford ("Ford"), in her official capacity as the executive director of NFEDC. Defendants include the following individuals named individually and in their official capacities: William Woodham ("Woodham"), the Gadsden County Sheriff; Roger Griswold ("Griswold"), Chief of Police for the City of Quincy; Robert Joyner ("Joyner"), Fire Chief for the City of Quincy; and Jud Allen ("Allen"), a building inspector for the City of Quincy.

According to the complaint, NFEDC is a "not for profit organization organized to empower families and individuals to become self-sufficient and self-directed, through community organizing, education, training, and economic development." Compl. at ¶ 4. Pursuant to its organizational goals, NFEDC submitted an unsolicited grant proposal to the DOC in January, 1995 to sponsor DOC's community residential transition program for youthful offenders in Gadsden County, Florida. In anticipation that DOC would award it the requested grant, NFEDC incurred certain expenses including the purchase of a mini farm, renovations to that farm, a two year lease of property called the Douglas House at the rate of $400.00 per month, and renovations to the Douglas House. In June,

1995, DOC and NFEDC entered into a contract that would allow NFEDC to provide the youthful offender services in Gadsden County, at the rate of $39.00 per youth, per day. During the week of September 11, 1995, DOC and the State Fire Marshall approved the use of the renovated Douglas House for the transition program.

While Plaintiffs were preparing the Douglas House for the transition program, Ford allegedly elicited support from various local agencies, community representatives, and neighbors. Ford also purportedly contacted Inspector Allen about applying for an exemption to the local zoning ordinance, who assured her that NFEDC could begin operating the transition program as soon as he received a copy of a Chapter 419 zoning exemption application[1]. At the end of August, 1995, NFEDC applied to the State Department of Health and Rehabilitative Services for the Chapter 419 exemption, supplying Inspector Allen with a copy of that application. In reliance upon Inspector Allen's assurance that its application for a zoning exemption would be granted, NFEDC incurred additional expenses including furnishings and equipment for the Douglas House and staff salaries. However, Plaintiffs do not allege that NFEDC was actually ever granted the exemption.

On September 19, 1995, NFEDC had its inaugural opening for the transition program at the Douglas House. Three DOC officials, including the Chief of the Bureau of Youthful Offender Program Services, were present for the ceremony. Plaintiffs allege that during the ceremony, Defendants Griswold, Allen, and Joyner unexpectedly entered the Douglas House property, and Allen

> in a hostile and frightening tone, insisted that he was going to shut down the transition program; angrily questioned the DOC representatives why "DOC wants to ram something down our throats"; and threatened to turn off the electricity if the program did not cease operating within 24 hours.

Compl. at ¶ 44. Ford allegedly asked Allen for 72 hours to resolve the matter, but Allen refused. Plaintiffs maintain that "Allen's 24 hour termination of NFEDC's business operations was not supported by a building code, zoning code, or law enforcement emergency, which may justify the coercive powers of the government without due process, nor was the 24 hour cessation order justified under any law or ordinance of the City of Quincy." Compl. at ¶ 47. Instead, Plaintiffs contend that Inspector Allen's actions were designed to impair NFEDC's business operations in Quincy, including present and future business opportunities with DOC.

Although Defendants Griswold, Joyner, and Woodham apparently did not order the closure of the Douglas House or take any actions against Plaintiffs such as issuing cita-

---

**1.** Florida Statutes Chapter 419 deals with site selection and approval of "community residential homes." "Community residential home" is defined as a dwelling unit licensed to serve clients of the State Department of Health and Rehabilitative Services ("HRS"), which provides a living environment for "7 to 14 unrelated residents who operate as the functional equivalent of a family." Fla.Stat. § 419.001(1)(a) (1995). "Resident" includes a child, as defined by §§ 39.01(12) and (14), which encompasses persistent runaways, habitual truants, persistently disobedient and incorrigible children, and dependent children who have been abandoned, abused, or neglected by the children's parents or other custodians and are in the custody of HRS. Fla. Stat. § 419.001(1)(d). When a site for a community residential home has been selected in an area zoned for multifamily use, certain information concerning the proposed home must be sent in writing to the chief executive officer of the local government encompassing the site. "The local government shall [then] review the notifica-

tion of the sponsoring agency in accordance with the zoning ordinance of the jurisdiction." Fla. Stat. § 419.001(3)(a). The local government may approve the siting, or deny it subject to certain limitations. Fla.Stat. §§ 419.001(3)(b)–(c).

There are restrictions that a local government may impose upon the use of a community residential home. For example, "[a] dwelling unit housing a community residential home established pursuant to this section shall be subject to the same local laws and ordinances applicable to other noncommercial, residential family units in the area in which it is established." Fla.Stat. § 419.001(7). In addition, persons who pose a direct threat to the health and safety of others may be barred from occupying a community residential home. Fla.Stat. § 419.001(9). Finally, "[t]he siting of community residential homes in areas zoned for single family shall be governed by local zoning ordinances." Fla.Stat. § 419.001(10).

tions or otherwise directly executing Inspector Allen's allegedly unlawful order, Plaintiffs nevertheless maintain that they played an active role in depriving Plaintiffs of their civil rights. Plaintiffs allege that all the Defendants conspired with one another to violate the Quincy code and the United States Constitution by terminating NFEDC's transition program. Furthermore, Police Chief Griswold's presence at the ceremony purportedly legitimized Inspector Allen's verbal termination order and ensured that everyone present would comply with it. In addition, Fire Chief Joyner's presence allegedly created the perception of fire code violations in the Douglas House, further legitimizing Allen's order and ensuring compliance. While Sheriff Woodham was not present at the opening, Plaintiffs assert that he made phone calls to certain city law enforcement personnel and other city officials "encouraging, instigating and inciting the blatant, bold, and outrageous activities of the Defendants." Compl. at ¶ 62. Plaintiffs conclude that as a result of Defendants' actions, DOC canceled the contract between NFEDC and DOC for the transition program.

Plaintiffs responded by filing a three count civil rights complaint pursuant to 42 U.S.C. § 1983. Count I is a procedural due process claim for the alleged deprivation of Plaintiffs' property interest in the use of the Douglas House for the transition program. Count II is a procedural due process claim for the alleged deprivation of Plaintiffs' liberty interest in their freedom to contract, and their reputation with DOC and the community. Count III is a substantive due process claim for the alleged deprivation of Plaintiffs' "fundamental right to use the Douglas House property to fulfill its contract with DOC." Compl. at ¶ 88.

**DISCUSSION:**

Defendants now move to dismiss Plaintiffs' claims pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P., on the grounds that the Court lacks subject matter jurisdiction and Plaintiffs have failed to state claims upon which relief may be granted. Specifically, Defendants Woodham, Griswold, and Joyner seek dismissal on the following grounds: (1) Plaintiff Ford lacks standing; (2) no substan-

tive due process rights created by the United States Constitution were infringed by Defendants; (3) Plaintiffs' failure to seek available state court remedies before bringing the instant action deprives this Court of jurisdiction and precludes Plaintiffs from stating their procedural due process claims; (4) Defendants are entitled to qualified immunity in their individual capacities; (5) Plaintiffs' failure to plead the violation of a policy, custom, or practice precludes the claims against Defendants in their official capacities; (6) Plaintiffs have failed to sufficiently allege claims against Defendant Woodham by showing his personal involvement, authority or control over the other Defendants in their decisions to act, or that he otherwise caused the alleged constitutional deprivation; and (7) Plaintiffs have failed to allege that Defendant Woodham possessed any authority or ability to provide them with the procedural due process which they demanded. These grounds for dismissal are addressed below.

As an initial matter, it is worth noting that a complaint is not to be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). "[I]n reviewing the sufficiency of a complaint in the context of a motion to dismiss [the panel must] ... treat all of the well-pleaded allegations of the complaint as true," *Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977), and must draw all inferences from those facts in the light most favorable to the plaintiff, *e.g., Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir.1993).

**I. Plaintiff Ford's Standing:**

Defendants Griswold and Joyner assert that Plaintiff Ford lacks standing to bring the instant action. According to Defendants, all the allegations contained in the complaint pertain to the contract between NFEDC and DOC, and Defendants' alleged interference with that contract. Defendants conclude that because Ford was not a party to the contract, she does not have standing (Doc. 24 at 17–18).

Plaintiffs respond by arguing that Ford "has standing to challenge the unlawful con-

duct and actions of the Defendants by virtue of the fact that Defendants [sic] conduct deprived her of the fundamental right to pursue her profession, and as her status as executive director of the NFEDC." Doc. 25 at 21. Plaintiffs maintain that Ford suffered direct adverse effects by Defendants' alleged unlawful denial of NFEDC's ability to provide the transition program services to DOC. As a result, Plaintiffs claim that Ford may raise the constitutional challenges at issue.

In the seminal case of *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Supreme Court discussed the requirements for party standing. The doctrine of standing is a threshold issue as to the justiciability of a case or claim. There are two essential aspects of standing that are germane to the present inquiry: constitutional standing under Article III, and prudential limits on the right to sue even when constitutional standing is present. *See id.* at 498–500, 95 S.Ct. at 2205–06; *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979). In examining the issue of standing in the context of a motion to dismiss, the Court must accept as true all of the material allegations of the complaint and construe the complaint in favor of the complaining party. *Warth,* 422 U.S. at 501–02, 95 S.Ct. at 2206–07.

Constitutional standing requires that the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to require her invocation of a federal court's jurisdiction and remedial powers. *Id.* at 498–99, 95 S.Ct. at 2205 (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). In other words, "[t]he Art. III judicial power exists only to redress or otherwise to protect

against injury to the complaining party, *even though the court's judgment may benefit others collaterally." Warth,* 422 U.S. at 499, 95 S.Ct. at 2205 (emphasis added). To have constitutional standing, Plaintiff Ford must demonstrate she has suffered an "injury in fact," causation between the injury and the conduct complained of, and that the injury can be redressed by a favorable decision. *United States v. Hays,* 514 U.S. ——, ——, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)); *Jacobs v. The Florida Bar,* 50 F.3d 901, 903–04 (11th Cir.1995).

■ Even viewing the complaint in the light most favorable to Plaintiffs, it is clear that Ford has not suffered an "injury in fact" sufficient to meet constitutional requirements. An "injury in fact" requires a plaintiff to show that she "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone,* 441 U.S. at 99, 99 S.Ct. at 1607–08. Most of the language contained in the complaint alleges injuries to NFEDC, and not Ford. *See* Compl. at ¶¶ 48–50, 54–56, 60–64, 68. To the extent that the complaint contains allegations that Ford herself suffered injuries, *see* Compl. at ¶¶ 69–70, 74, 78–80, 84, 88–91, 95, those injuries are premised on the deprivation of NFEDC's property interest in the Douglas House [2], deprivation of NFEDC's liberty interest in the use of the Douglas House and in its reputation to DOC and the community [3], and the cancellation of a contract between NFEDC and DOC [4].

The Seventh Circuit has flatly rejected that an employee has suffered an "injury in fact" under analogous circumstances:

---

2. The complaint alleges that only NFEDC, and not Ford, had a valid property interest in the Douglas House. *See* Compl. at ¶ 68.

3. There is no allegation that Plaintiff Ford suffered deprivation of a liberty interest of the right to use the Douglas House property in her individual capacity. To the extent that Ford was deprived of a liberty interest in her official capacity as the executive director of NFEDC, that would essentially be the same as deprivation of NFEDC's liberty interest.

Moreover, the complaint is devoid of any specific allegations that the Defendants negatively

implicated Ford's "good name, reputation, honor, or integrity" [*see Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972)], in either her individual and official capacities. *See* Compl. at ¶¶ 44, 49–50, 56, 61–62. Instead, Plaintiffs merely allege that Defendants' destruction of NFEDC's contractual relationship with DOC injured Ford's reputation with DOC and the community. *See* Compl. at ¶¶ 79–80.

4. There is no allegation that Plaintiff Ford was a party to the contract in her individual capacity.

Salai alleged that he is "an employee of SHEA employed as a project superintendent." However, to have standing, Shea must allege "injury in fact." On appeal, Salai attempts to argue that he is injured directly by the local business preferences because Shea could go out of business and he would lose his employment and his "livelihood". This claim is not based on any injury suffered directly by Salai. His claim is based on the injury of a third party, Shea. Salai is not subject to the local business preference, and because he has not attempted to contract with the City, he cannot allege a direct injury.

*J.F. Shea Co., Inc. v. City of Chicago,* 992 F.2d 745, 749–50 (7th Cir.1993).

Indeed, Plaintiffs seemingly concede the absence of a personal injury to Ford because Ford is suing Defendants in her *official capacity* as executive director of NFEDC, and not in her individual capacity. Any injury Ford suffered as a result of Defendants' actions—including the loss of employment, which would obviously affect her personally—will be "merely incidental to the corporation's injury" and not cognizable. *Warren v. Manufacturers Nat'l Bank,* 759 F.2d 542, 545 (6th Cir.1985). Therefore, Ford lacks constitutional standing. *See generally Shea,* 992 F.2d at 749 ("Because employees must allege a *separately* cognizable injury, employees generally do not have standing to assert claims of the corporation because they lack direct injury.") (collecting cases) (emphasis added); *Lane v. Dickinson State Bank,* 605 S.W.2d 650, 653 (Tex.Civ.Ct.App.1980) (employee had no standing to sue on behalf of employer with respect to alleged fraud committed by bank and its president against employer).

■ Furthermore, even if Ford could meet the constitutional standing requirements, she would still be precluded from raising the instant claims. In addition to Article III's standing requirements, the Supreme Court has imposed prudential limitations on standing to sue. One such prudential limitation is the requirement that plaintiffs must assert their own rights and may not rest upon the rights of others. *Knight v. Alabama,* 14 F.3d 1534, 1554 (11th Cir.1994) (citing *Warth,* 422 U.S. at 499, 95 S.Ct. at 2205). This limitation does not apply "where (1) the relationship between the plaintiff and the third party is such that the plaintiff is nearly as effective a proponent of the third party's right as the third party itself, and (2) there is some obstacle to the third party asserting the right." *Knight,* 14 F.3d at 1554.

■ In the case sub judice, the complaint clearly shows that Ford is resting upon the claims of NFEDC, her employer, against the Defendants. Moreover, the relationship of Ford to the third-party, NFEDC, shows that the exception to the prudential limitation is inapplicable. First, the relationship between Ford and her employer, NFEDC, is not such that Ford would be as effective an advocate as the NFEDC. *Cf. Region 8 Forest Serv. Timber Purchasers Council v. Alcock,* 993 F.2d 800, 810 & n. 15 (11th Cir.1993) ("In cases allowing third-party standing, the relationship between the party asserting the right and the third party has been characterized by a strong identity of interests which is absent in an employer/employee relationship.") (collecting cases), *cert. denied,* 510 U.S. 1040, 114 S.Ct. 683, 126 L.Ed.2d 651 (1994). Second, the participation in this litigation by NFEDC, the third party employer on whose behalf Ford seeks to sue Defendants[5], demonstrates that there is no obstacle to the third party employer from asserting its constitutional rights for itself. *See Knight,* 14 F.3d at 1554–55 & n. 6; *Jaffe v. Sharp,* 463 F.Supp. 222, 231 (D.Mass.1978), *aff'd, Preterm, Inc. v. Dukakis,* 591 F.2d 121 (1st Cir.), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1057 (1979). Therefore, the prudential limitation on third party standing prevents Ford from being a proper party plaintiff in this action.

Consequently, Plaintiff Ford is DISMISSED from this cause. The rest of the discussion will be directed solely at NFEDC,

---

5. Obviously, since Ford is suing Defendants in her official capacity, she is litigating this action on behalf of her employer, NFEDC.

548

the only Plaintiff with standing to prosecute the claims at issue.

## II. Substantive Due Process Claims:

NFEDC alleges it "had a fundamental right to use the Douglas House property to fulfill its contract with DOC," and that Defendants deprived it of that right by illegally restricting its use of the Douglas House for the transition program. Compl. at ¶¶ 88–89. NFEDC further alleges that Defendants' actions were "arbitrary, capricious, and lacked any rational basis," in violation of the clearly established laws of the Quincy municipal code and the United States Constitution. Compl. at ¶¶ 91–92. NFEDC therefore seeks monetary damages, attorneys' fees and costs, and appropriate equitable relief for the deprivation of its substantive due process right to the use of the Douglas House.

Defendants move to dismiss NFEDC's substantive due process claim on several different grounds. First, assuming NFEDC had a property interest in the Douglas House, Defendants maintain that under *McKinney v. Pate* [6] and its progeny, NFEDC's property interest in the Douglas House was a state-created interest unprotected by the Due Process Clause of the United States Constitution. Second, even if NFEDC had a constitutionally protected interest in the Douglas House, Defendants assert that they took no actions that resulted in the deprivation of that interest. Third, Defendants contend that if they took any actions that deprived NFEDC of a constitutionally protected interest, their actions were executive in nature, and therefore foreclosed by *Flint Electric Membership Corporation v. Whitworth*, 68 F.3d 1309, 1313 (11th Cir. 1995), *modified*, 77 F.3d 1321 (11th Cir.1996).

NFEDC responds by arguing that *McKinney* does not foreclose its substantive due process claims. NFEDC first represents that its right to pursue its business is a fundamental "liberty" interest entitled to substantive due process protection. Furthermore, NFEDC cites to *Decarion v. Monroe County*, 853 F.Supp. 1415 (S.D.Fla.1994), a post-*McKinney* decision recognizing that

individuals who were denied an infrastructure permit might be able to state a substantive due process claim. In addition, NFEDC asserts that *McKinney* only applies to wrongful termination actions, and thus is factually distinguishable from the case at bar. Accordingly, NFEDC concludes that Defendants' motions to dismiss these claims should be denied.

A review of the case law in this Circuit reveals that NFEDC has failed to state a substantive due process claim sufficient to withstand Defendants' motion to dismiss.

While NFEDC characterizes its claim as a deprivation of its liberty interest to pursue its business with DOC, this Court has an independent responsibility "to examine [NFEDC's] cause of action for what it actually is, not for what [NFEDC] would have it be." *McKinney*, 20 F.3d at 1560. This determination should be made in light of the facts NFEDC has alleged to support its § 1983 claim. *Id.* Contrary to NFEDC's response to the motions to dismiss, the plain language in the complaint alleges deprivation of a property interest, and not a liberty interest. *See generally* Compl. at ¶ 89 (". . . depriving NFEDC and Carolyn Ford of their right to use the property to fulfill their contract with DOC. Defendants were not entitled to deprive [Plaintiffs] of their constitutionally protected *property interest* . . .") (emphasis added); *id.* at ¶ 90 ("Defendants' actions . . . denied NFEDC and Carolyn Ford of their *property interest* . . .") (emphasis added). Therefore, the Court will assume, for purposes of analyzing the present motions to dismiss, that NFEDC had a state-created property interest in the use of the Douglas House for the transition program—even if NFEDC was never granted the zoning exemption it requested. *Cf. Reserve, Ltd. v. Town of Longboat Key*, 17 F.3d 1374, 1380 (11th Cir.1994) (under Florida law, a landowner will have a property interest in a building permit where the circumstances support application of equitable estoppel), *cert. denied*, — U.S. —, 115 S.Ct. 729, 130 L.Ed.2d 633 (1995); *Decarion*, 853 F.Supp.

**6.** 20 F.3d 1550 (11th Cir.1994) (en banc), *cert. denied*, — U.S. —, 115 S.Ct. 898, 130 L.Ed.2d

783 (1995).

at 1419–20 (same rule, even where building permit was never actually issued).

■ Nevertheless, NFEDC still cannot state a substantive due process violation. It is the law of this Circuit that state-created substantive rights taken away through executive or non-legislative governmental action may not form the basis for a substantive due process claim. *E.g., Breeding ex rel. C.B. v. Driscoll,* 82 F.3d 383, 386–87 (11th Cir.1996); *Whitworth,* 68 F.3d at 1313; *McKinney,* 20 F.3d at 1560; *Bowman v. Alabama Dep't of Human Resources,* 857 F.Supp. 1524, 1528–29 (M.D.Ala.1994). In *McKinney,* the court articulated the difference between "legislative" and "executive" acts as follows:

> Executive acts characteristically apply to a limited number of persons (and often to only one person); executive acts typically arise from the ministerial or administrative activities of members of the executive branch.... Legislative acts, on the other hand, generally apply to a larger segment of—if not all of—society; . laws and broad-ranging executive regulations are the most common examples.

20 F.3d at 1557 n. 9. *See also id.* at 1558 n. 14 (emphasizing the importance of recognizing the differences between these two types of governmental acts). This legislative/executive dichotomy is applicable to acts of zoning enforcement [*see Crymes v. DeKalb County, Ga.,* 923 F.2d 1482, 1485–86 (11th Cir.1991) (discussing dichotomy in context of absolute immunity); *Sullivan Properties, Inc. v. City of Winter Springs, Fla.,* 899 F.Supp. 587, 596 (M.D.Fla.1995) ], fire code enforcement [*Wohl v. City of Hollywood,* 915 F.Supp. 339, 343–44 (S.D.Fla.1995) ], and development permit denials [*see Capital Nautilus Fitness Ctr. v. City of Tallahassee,* No. 95–40287, Doc. 6 (Stafford, J.) ].[7]

■ Taking as true NFEDC's allegation that Defendants acted arbitrarily and capriciously in shutting down the Douglas House, there is simply no allegation that any of the moving Defendants did so in a legislative capacity. NFEDC claims that the Defendants conspired together to prevent NFEDC's use of the Douglas House property for the transition program, and then actually executed an order that accomplished that objective. However, NFEDC's theory of recovery rests on specific allegations of governmental misconduct that impacted a particular entity (namely, NFEDC)—characteristics of non-legislative, executive action. *See Smith v. Lomax,* 45 F.3d 402, 406 (11th Cir.1995) (discussing absolute legislative immunity); *McKinney,* 20 F.3d at 1557 n. 9; *Crymes,* 923 F.2d at 1485. As a result, NFEDC's substantive due process claim is expressly foreclosed by *McKinney,* and dismissal of the moving Defendants is warranted. *E.g., Williams v. Goldsmith,* 905 F.Supp. 996, 1000 (M.D.Ala.1995).

### III. Procedural Due Process Claims:

Finally, NFEDC alleges Defendants' actions against it deprived it of its property in the Douglas House, and its liberty interests in its freedom to contract and its reputation, without due process of law. Counts I–II of Compl. According to NFEDC, Defendants did not provide it with notice of any violation of law, nor an opportunity for a hearing. NFEDC contends that state remedies were inadequate for both of these counts. NFEDC therefore seeks injunctive relief, "compensatory, consequential, incidental, and punitive damages," interest, attorneys' fees and costs, and any other relief this Court deems proper. Compl. at ¶¶ 75, 85.

Defendants move for dismissal of these claims on two separate grounds. First, they argue that NFEDC's failure to seek available state remedies before bringing the instant action precludes it from stating its procedur-

---

**7.** *McKinney*'s holding has been "specifically limited to substantive due process challenges to non-legislative acts." *TRM, Inc. v. United States,* 52 F.3d 941, 945 n. 17 (11th Cir.1995) (citing *McKinney,* 20 F.3d at 1557 n. 9, 1560). NFEDC takes this limitation a step further by maintaining that *McKinney* only applies to wrongful termination actions. However, as the foregoing citations make clear, *McKinney*'s mandate also applies to a wide variety of claims of arbitrary and capricious conduct depriving a plaintiff of a state-created property interest—so long as that conduct is in the non-legislative or executive arena. *Cf. Bowman,* 857 F.Supp. at 1528 ("Though the facts in *McKinney* involved state employment law, the implication of its holding is that it applies to all non-legislative acts which involve state-created rights.").

al due process claims. Defendants maintain that NFEDC should have first sought to bring the Douglas House closure to the attention of local government officials. If those officials failed to respond, Defendants contend that NFEDC should have petitioned the state circuit court through a petition for writ of certiorari. Second, Defendants assert that NFEDC's failure to pursue proper recourse through the state-offered remedies makes its claim premature, thereby depriving this Court of jurisdiction. Defendants cite as authority for their latter argument the recent decisions of *Boatman v. Town of Oakland,* 76 F.3d 341 (11th Cir.1996), and *Strickland v. Alderman,* 74 F.3d 260 (11th Cir.1996).

NFEDC responds by arguing that the available state remedies were inadequate. According to NFEDC, it was never apprised of what law or ordinance that it had violated, making it futile to seek relief through local government officials and the state circuit court. NFEDC therefore concludes that it has properly stated procedural due process claims upon which this Court can grant relief.

The Supreme Court has indicated that a violation of a person's procedural due process may provide the foundation for a § 1983 claim. *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). Evaluation of a procedural due process claim requires a two-part analysis: (1) has the plaintiff been deprived of a protected interest; and (2) if so, was due process accorded. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982). The Court will assume that the first requirement has been met as to each of NFEDC's two claims. However, NFEDC has failed to show that it was not given proper due process before it was deprived of the interests in question.

■ Sufficient due process is ordinarily given when the facts show plaintiff was provided notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). Nonetheless, the *McKinney* court noted that even where a plaintiff has shown a procedural deprivation, "the state may cure ... [that] deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." 20 F.3d at 1557. Assuming that the moving Defendants were somehow in a position to issue a final decision—making it futile for NFEDC to pursue any remedies from Defendants or any other local government officials [*see Strickland,* 74 F.3d at 265–66]—NFEDC could have brought these facts before a state circuit judge.[8] *See Boatman,* 76 F.3d at 346. Because "a procedural due process violation is not complete 'unless and until the State fails to provide due process,'" *McKinney,* 20 F.3d at 1557 (quoting *Zinermon,* 494 U.S. at 123, 110 S.Ct. at 982), NFEDC's procedural due process claims must be dismissed because Florida courts have not failed to provide NFEDC with such process.[9]

One further point must be made about NFEDC's procedural due process claims, although it is not necessary in order to reach the result noted above. NFEDC's complaint seeks compensatory damages for the deprivation of its property and liberty interests without procedural due process. However, the *McKinney* court made it clear that the appropriate remedy for a procedural due process deprivation "is equitable: for instance, in an employment case, the claimant typically seeks reinstatement and a properly conducted pre-termination hearing." 20 F.3d at 1557. Instead, NFEDC's request for damages is more akin to the remedy for deprivation of a substantive right.[10] *See id.* Therefore, it appears that even to the extent NFEDC attempted to state a procedural

---

**8.** In addition, like the plaintiffs in *Boatman,* if NFEDC had sought relief in the state circuit court in a timely manner, it is unlikely it would have sustained much of a loss. *Cf.* 76 F.3d at 345 n. 10.

**9.** NFEDC's appropriate remedy is to file a separate petition for certiorari in a state circuit court, seeking review of Defendants' actions.

**10.** As the foregoing analysis has shown, NFEDC cannot state a substantive due process claim.

claim, it has requested—in part—the wrong form of relief.

Consequently, for all the afore-mentioned reasons, NFEDC's procedural due process claims against the moving Defendants are dismissed.

## IV. Other Grounds For Dismissal/Defendants' Motions To Strike:

Having dismissed all of Plaintiffs' claims, it is unnecessary to address Defendants' alternative grounds for dismissal. Furthermore, dismissal of all of Plaintiffs' claims renders moot the Defendants' separate motions to strike.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

(1) The Motions to dismiss by Defendants GRISWOLD and JOYNER (Docs. 10 & 24) and Defendant WOODHAM (Doc. 15) are GRANTED.

(2) The clerk is directed to enter judgment for Defendants GRISWOLD, JOYNER, and WOODHAM against Plaintiff Carolyn Ford. The clerk is further directed to enter judgment for Defendants GRISWOLD, JOYNER, and WOODHAM against Plaintiff NFEDC as to Count III of the complaint.

(3) As to Counts I and II of the complaint, Defendants GRISWOLD, JOYNER, and WOODHAM are dismissed without prejudice to Plaintiff NFEDC to seek relief from the appropriate state entities.

(4) All the remaining motions (Docs. 11 & 18) are MOOT.