MURDOCK, Justice
(concurring specially in case no. 1140907 and concurring in the result in case no. 1141241).
I concur specially in ease no. 1140907. As to the cross-appeal, case no. 1141241,1 concur in the result.

Case No. 1U0907

Section 14 of the Alabama Constitution of 1901 says that “the State of Alabama shall never be made a defendant in any court of law or equity.” Art. I, § 14, Ala. Const.1901. As a result, the courts of this State have no authority to consider any claim that names the “the State of Alabama” per se as the defendant. Further, we quite naturally treat the naming of an organizational unit of the State of Alabama (e.g., an agency) as a defendant as one and the same as naming “the State of Alabama.” See Ex parte Alabama Dep’t of Transp., 978 So.2d 17, 23 (Ala.2007) (noting that “a State agency is absolutely immune from suit”).
We do not, however, for purposes of § 14, treat the naming of a State officer or employee per se as one and the same as naming the State of Alabama as a defendant, even when the officer or employee is named in his or her official capacity. If we did, we could not allow for the several “exceptions” we have recognized to the naming of such officials as defendants[11] *144 because § 14 admits of no “exceptions.”[12] Instead, we examine whether the suit against an official is one that in effect is a suit against the State of Alabama, primarily examining whether the claim, if successful, would adversely affect a contract or property right of the State.
Even in reference to this latter standard, we do not consider that a suit is one that adversely affects a contract or property right of the State when the State’s payment obligation arises from the particular terms of a contract (the “private law,” if you will, created between the State and another party) that obligates the State to pay for goods and services accepted by the State. We reason that the moneys owed the plaintiff under that circumstance are no longer, of right, those of the State. See Alabama Dep’t of Transp. v. Harbert Int'l, Inc., 990 So.2d 831, 845-46 (Ala.2008) (“[A]lthough the payment of the funds ‘may ultimately touch the State treasury,’ Horn v. Dunn Bros., 262 Ala. 404, 410, 79 So.2d 11, 17 (1955), the payment does not ‘affect the financial status of the State treasury,’ Lyons [v. River Rd. Constr., Inc.,] 858 So.2d [257,] 261 [ (Ala.2003) ], because the funds ‘do not belong to the State,’ Alabama Dep’t of Envtl. Mgmt. v. Lowndesboro, 950 So.2d 1180, 1190 n. 6 (Ala.Civ.App.2005) (two-judge opinion), and the State treasury ‘suffers no more than it would’ had the State officers originally performed them duties and paid the debts. Horn, 262 Ala. at 410, 79 So.2d at 17.”), abrogated on other grounds by Ex parte Moulton, 116 So.3d 1119 (Ala.2013); see generally State of Alabama Highway Dep’t v. Milton Constr. Co., 586 So.2d 872 (Ala.1991); State Bd. of Admin. v. Roquemore, 218 Ala. 120, 117 So. 757 (1928).
The manner in which this case is presented does not require us to reexamine the precedent relating to immunity appropriately relied upon by the main opinion in regard to state-law contract claims by State employees. My consideration of the issues presented here, however, has raised for me the question whether, in an appropriate case, this Court should consider the following: Whether, when the State has by the terms of a specific contract between it and another party agreed to pay for a good or service and the other party to that contract tenders the same in conformity with the terms of that contract, such moneys should no longer be considered, of right, to be moneys of the State for purposes of whatever immunity analysis is to be applied. Put differently, would an award of such moneys to the other party to the contract under such circumstances, in truth, adversely affect a contract or property right of the State? A negative answer to this latter question would put Alabama in line with most of the other states of the union.[13]

*145
Case No. imm

As to the cross-appeal, I agree with the main opinion that Stacy Danley is not entitled to outright reinstatement pursuant to his § 1983 claim.' The federal courts have explained that such reinstatement is available in § 1983 cases in which the plaintiff has demonstrated a violation of a substantive constitutional right. See, e.g., Allen v. Autauga Cty. Bd. of Educ., 685 F.2d 1302 (11th Cir.1982) (holding that public-school teachers discharged for exercising their First Amendment free-speech rights were entitled to reinstatement); Reeves v. Claiborne Cty. Bd. of Educ., 828 F.2d 1096 (5th Cir.1987) (holding that county school administrator transferred to another position because she exercised her First Amendment right to free expression was entitled to reinstatement); and Williams v. Roberts, 904 F.2d 634, 639 (11th Cir.1990) (holding that county tax commissioner’s office employee who was transferred and then fired for exercising his First Amendment free-speech rights was entitled to reinstatement).
The aforesaid cases are distinguishable from cases in which an employee invokes § 1983 in an effort to vindicate procedural constitutional rights. In the latter category of cases, an employee may be entitled to a “limited” reinstatement to allow the employee to receive “process” to which he or she is entitled but that previously was denied. See, e.g., McKinney v. Pate, 20 F.3d 1550, 1561 (11th Cir.1994) (concluding that the plaintiffs action asserted claims alleging violations of procedural due process and that “the appropriate remedy in this case is not lost wages and benefits calculated on the basis of McKinney’s remaining working life; rather proper remedies include reinstatement and the correction of any procedural defects in the means by which McKinney was terminated”); Florida Educ. Dev. Corp. v. Woodham, 942 F.Supp. 542, 550 (N.D.Fla.1996) (observing that “the McKinney court made it clear that the appropriate remedy for a procedural due process deprivation ‘is equitable: for instance, in an employment case, the claimant typically seeks reinstatement and a properly conducted pre-termination hearing’ ” (quoting McKinney, 20 F.3d at 1557)); and Poindexter v. Department of Human Res., 946 F.Supp.2d 1278, 1290 (M.D.Ala.2013) (noting “the limitations to reinstatement should Plaintiff succeed” on her claim of violations of her procedural due-process rights: “A ruling in her favor would not prevent Plaintiffs termination based on the same allegations set out in charge letter.... It would only require that Plaintiff receive notice and an opportunity to be heard prior to her termination. ... Reinstatement would return Plaintiff to the status quo that existed the morning of April 9, 2010, and leave Defendants to conduct a hearing if the agency still desired Plaintiffs termination.”). We are not presented here with an issue for decision in this regard.
WISE, J., concurs.

. See, e.g., Ex parte Alabama Dep’t of Fin., 991 So.2d 1254, 1256-57 (Ala.2008) (noting that “[t]here are six general categories of actions that do not come within the prohibition of § 14” and that, among them, are “(1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; (4) actions brought against State officials under the Declaratory Judgments Act, Ala.Code 1975, § 6-6-220 et seq., seeking construction of a statute and its application in a given situation; (5) valid inverse condemnation actions brought against State officials in their representative capacity”). The sixth category referenced in Ex parte Alabama Department of Finance was recently restated as follows;
“(6)(a) actions for injunction brought against State officials in their representative capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, ... and (b) actions for damages brought against State officials in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpreta *144 tion of law, subject to the limitation that the action not be, in effect, one against the State....”
Ex parte Moulton, 116 So.3d 1119, 1141 (Ala. 2013) (citations omitted).

. In light of this fact, query whether the immunity we afford State officials logically must find its source somewhere other than § 14, e.g., the common law. I do not see how naming a State official as a defendant in an action seeking an injunction to require the official to perform a legal duty of the State of Alabama is somehow less a naming of the State as the defendant than naming that official as a defendant in an action seeking money damages.

. Although some states start with a constitutional provision expressly allowing the legislature to waive immunity as it sees fit and others recognize that the immunity at issue derives from the common law and is waivable for that reason, virtually all other states achieve on some ground a differentiation between specific contractual obligations voluntarily undertaken in a given case between the State and another party (the "private law” between those parties) and claims against the *145 state for breach of general obligations imposed by law. The latter of course includes primarily tort actions, i.e., claims based on a breach of duty imposed generally by the common law or by statute. See, e.g., 81A C.J.S. States § 554 (2015) (noting that, "generally, when a state malees a contract, it is liable for a breach of its agreement, and the doctrine of sovereign immunity does not apply”). Query whether the obligations imposed upon the State by a statute governing procedures for personnel actions would fall in this latter category, even though those procedures (like other generalized legal obligations) can be said to be read into employment contracts.