**CHURCH & TOWER, INC., a Florida corporation, Plaintiff,**

v.

**MIAMI–DADE COUNTY, FLORIDA, a political subdivision of the State of Florida, Defendant.**

**No. 98–0704–CIV.**

United States District Court, S.D. Florida.

June 30, 1998.

Alan H. Fein, Stearns Weaver Miller Wessler Alhadeff & Sitterson, Miami, FL, for Plaintiff.

Thomas A. Tucker Ronzetti, Dade County Attorney's Office, Miami, FL, for Defendant.

## *FINAL ORDER OF DISMISSAL*

MORENO, District Judge.

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss, filed on **April 16, 1998.**

The Court has considered the pleadings and oral arguments of counsel held on June 15, 1998 and is otherwise fully advised in the premises. Because the Court concludes that the Plaintiff's claims of a "de facto debarment," or total exclusion from future construction contracts with Miami–Dade County, are not ripe for review, the Court grants Defendant's motion to dismiss.

### Factual Background

Church & Tower ("C & T") is a prominent construction company in the business of repairing roads, including asphalt paving, sidewalk construction, and road striping. In 1987, after competitive bidding, Miami–Dade County awarded C & T Contract W–755, to repair paving and sidewalks. C & T and the County enjoyed a long term business relationship until allegations surfaced in the local media regarding C & T's failure to perform construction work despite having received payments from the County. Despite the allegations, no criminal charges were brought against C & T. In 1997, the County Manager ordered an audit to review, among other things, Contract W–755. As a result of the audit, the County Manager froze existing work under the contract and held outstanding payments pending the resolution of overcharged amounts. C & T is suing the County over those withheld payments in another action in Florida state court.

The County subsequently solicited bids for similar work in new contracts, W–785 a & b. C & T alleges that the County Mayor urged the County Commissioners to throw out C & T's bids under these contracts, even though C & T was the low bidder, on the grounds that the audit and investigation of W–755 "place[d] a cloud over the award of W–785 a & b." C & T alleges that the County stated that it would limit C & T, during the pendency of the investigation, to consideration for contracts with a different scope of work from Contract W–755, that is, contracts that do not include paving, concrete, or striping work.

### The County Ordinances

Under the Home Rule Charter of Miami–Dade County, contracts for public improvements "shall be made whenever practicable on the basis of specifications and competitive bids." Home Rule Charter § 4.03(d). Competitive bidding is not mandated in all cases, however: "The Board, upon written recommendation of the Manager, may by resolution adopted by two-thirds (2/3) vote of the members present waive competitive bidding when it finds this to be in the best interest of the County." *Id.*

The procedures for awarding contracts through competitive bidding are outlined in the County ordinances. The County Manager reviews responses to solicitations and recommends to the County Commission that it make an award or take other appropriate

action. *See* § 2–8.3 of the Code of Miami–Dade County (the "Code"). A disappointed bidder may file a protest with the Clerk of the Board challenging the Manager's recommendation. *See* Code § 2–8.4(b). A properly filed protest is referred to a hearing examiner who holds a hearing and submits written findings and recommendations. *See* Code § 2–8.4(c). Those findings and recommendations are presented to the Commission together with the recommendation of the County Manager. *See* Code § 2–8.4(e). The Commission also permits presentations to be made by the interested parties. *See id.* The Commission may then take the action recommended by the Manager, or take other action, including the rejection of all bids. *See* Code § 2–8.4(f). The Commission also has the power to waive the requirements of the bid protest procedures and entertain a bid protest itself upon written recommendation of the County Manager. *See* Code § 2–8.4(h).

The County also has an ordinance, Code § 10–38, that provides the procedures required before a contractor can be debarred, that is, completely excluded from County contracting and subcontracting for a reasonable, specified period. Before debarment can occur, several procedures must be followed. First there must be an investigation by the department in question resulting in a request for debarment. *See* § 10–38(i). Upon the receipt of this request, the County Manager must create an independent Debarment Committee to investigate the bases for the request. *See id.* The contractor must be served with notice of the proposal to debar, be given an opportunity to respond in writing, be afforded a hearing at which the contractor can present evidence and confront the contractor's accusers, and be served with notice of the Committee's decision. *See id.* The contractor is also given the right to appeal any adverse decision of the Debarment Committee directly to an appellate panel of the Florida Circuit Court. *See* Code § 10–38(i). Causes for debarment include

certain criminal activity, such as fraud, antitrust, and embezzlement, as well as the willful violation of a County contract.

## Legal Analysis

■ C & T brings this action claiming that the County's actions constitute a "de facto debarment" without due process of law. Essential to the resolution of this claim are three legal issues: (1) whether C & T's claims are ripe for review; (2) if so, whether C & T's has alleged a cognizable property or liberty interest the deprivation of which requires due process of law; and (3) if C & T has stated such an interest, whether adequate procedures exist under state law to address C & T's claims. Because the Court finds that C & T's claims are not ripe for review, the Court concludes that it lacks subject matter jurisdiction to address C & T's claims and accordingly will not reach the remaining two issues.

■ The ripeness doctrine holds that a litigant lacks standing to bring, and a court consequently lacks jurisdiction to hear, a claim that is contingent on future events. *Digital Properties, Inc. v. City of Plantation,* 121 F.3d 586 (11th Cir.1997). For a due process claim to be ripe, the governmental agency charged with procedural responsibility must have made a final decision on the matter at issue. *See Strickland v. Alderman,* 74 F.3d 260, 265 (11th Cir.1996).

Applying this standard, it is clear that C & T's claims are not ripe. The County has not made a final determination regarding the debarment of C & T, nor even begun debarment proceedings. The County has only refused to award C & T two contracts related to paving and striping work.[1] Thus, C & T cannot claim that it *has been* denied the possibility of doing any business with the County, only that it *will be* denied all future paving or striping contracts (what C & T calls "de facto debarment"). In support of this claim, C & T cites memos and state-

---

1. C & T cannot bring a challenge before this Court on the denial of those bids alone because that challenge was denied by the Commission, pursuant to County Ordinance procedures, and the appeal of that decision is currently pending before the Florida Circuit Court sitting in its appellate capacity to review decisions of the

County Commission. In addition, a Florida Circuit Court judge, in a separate action, has stayed the awarding of Contracts 785 a & b in order to provide the appellate panel of the Circuit Court an opportunity to consider C & T's challenge to the County Commission's actions.

ments by the County Mayor and the County Manager evincing a policy to deny C & T all County contracts related to paving or striping until the investigation of C & T is completed. Whatever the truth of these statements, they cannot form the basis of C & T's due process claim. The Court cannot assume that the statements attributed to the Mayor and Manager in the press are sufficient to predict how the County will act in the future. The terms of county officials are not permanent. Indeed, the present Manager has not been permanently appointed, but is serving during the search for a permanent Manager. The next paving and striping contract approved by the County might not be for several years. Even assuming that the make-up of the local government remains constant, the views of Commissioners, Mayors, and Managers are not static, particularly where the County's denial of C & T's bids was expressly made pending the investigation of C & T. C & T may be successful in its current efforts to vindicate its work under Contract W–755 before the state courts or to restore the confidence of the County in its work once the County's investigation is completed.

C & T claims that it has been effectively debarred from all future County contracts, but neither C & T, the County, nor this Court can truly predict how the County will receive future C & T bids until those bids are made. These circumstances present exactly the type of scenario that the Article III case and controversy requirement prevents this Court from considering. *See Strickland,* 74 F.3d at 265. Until C & T is formally debarred or actually bids on a contract and is rejected despite being the lowest bidder, it has suffered no concrete injury and therefore lacks the standing to bring a claim for relief.[2]

▮ The Court understands C & T's impassioned arguments that the delay in an investigation in the face of a finding by the hearing examiner (a well respected former State Circuit Judge) in C & T's favor is unfair to a company that has had a positive, long term relationship with the County. If the County is convinced of C & T's wrongdo-

ing under Contract W–755 and no longer wishes to consider C & T's bids, it would provide a measure of closure and certainty if the County would initiate formal debarment proceedings. Yet there is no principle of either constitutional or local law that compels the County to do so. Indeed, under the County Code's procedures, the County has two distinct options for preventing the awarding of a County contract to a contractor: formal debarment, or the denial of the contractor's bids on an individual basis. Due process is not violated under either course of action because the Code provides procedures for a disappointed bidder to challenge each. A contractor has a right under the Code to argue and present evidence on its behalf during the debarment procedure. Similarly, a contractor can challenge the denial of individual bids before County boards. In both cases the decisions of the County can be appealed to the Florida state courts. C & T's own efforts to challenge the actions of the County are telling: the presence of adequate state procedures and remedies is clearly demonstrated by C & T's ability to raise its challenge of the denial of its bids under Contracts 785 a & b before an appellate panel of the Florida Circuit Court and to obtain before a separate Florida Circuit Judge a stay preventing the awarding of those contracts to other bidders while the appellate panel considers the challenge. *See Flint Elec. Membership Corp. v. Whitworth,* 68 F.3d 1309, 1313–14 (11th Cir.1995). Thus, while the County's method of denying C & T these two contracts pending an investigation certainly places C & T in a difficult and uncertain position, C & T is not without procedural avenues under state law to challenge the County's actions. There is nothing under either state or federal law authorizing this Court to compel the County to choose a different course of action.

### Conclusion

Accordingly, the Court finds that the lack of a formal debarment is fatal to C & T's

---

2. For the same reasons, the Court rejects any argument that it would be futile on the part of C & T to make future bids on County contracts. *See Strickland,* 74 F.3d at 265 ("An exception to

the final decision requirement exists where it would be futile for the plaintiff to pursue a final decision.").

§ 1983 claims. There being no justiciable claim presented, it is

ADJUDGED that the Defendant's motion to dismiss is GRANTED and this case is DISMISSED.