United States Court of Appeals,

Eleventh Circuit.

Nos. 94-9199, 94-9227.

FLINT ELECTRIC MEMBERSHIP CORPORATION, Plaintiff-Appellee,

v.

Bobby WHITWORTH, Individually and in his official capacity as
Department of Corrections Commissioner, Clyde Stovall, Individually
and in his official capacity as Assistant Commissioner of
Department of Corrections, Defendants-Appellants,

Georgia Power Company, Defendant.

PATAULA ELECTRIC MEMBERSHIP CORPORATION, Plaintiff-Appellee,

v.

Bobby WHITWORTH, Individually and in his official capacity as
Department of Corrections Commissioner, Clyde Stovall, Individually
and in his official capacity as Assistant Commissioner of
Department of Corrections, David C. Evans, Individually,
Defendants-Appellants,

Georgia Power Company, Defendant.

Nov. 15, 1995.

Appeals from the United States District Court for the Northern
District of Georgia. (Nos. 1:90-CV-1550-HTW and 1:90-CV-1675-HTW),
Horace T. Ward, Judge.

Before BARKETT, Circuit Judge, and HENDERSON and CLARK, Senior
Circuit Judges.

PER CURIAM:

Bobby Whitworth, Clyde Stovall and David C. Evans, officials

of the Georgia Department of Corrections (the "DOC"),[1] appeal from

orders entered in the United States District Court for the Northern

---

[1]Whitworth is identified in the record as either the
Commissioner or the Deputy Commissioner of the DOC during the
relevant time frame and Evans as his predecessor in the office of
Commissioner. Stovall is described as the Assistant Commissioner
or the Director of Facilities Development and Maintenance for the
DOC. They shall be referred to collectively as the "DOC
officials" or "defendants."

District of Georgia denying their motions for summary judgment asserting qualified immunity from 42 U.S.C. § 1983 damages. For the reasons stated below, we reverse the denial of qualified immunity and remand the case to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

These appeals arose out of separate lawsuits brought by Flint Electric Membership Corporation and Pataula Electric Membership Corporation (the "EMCs"), against the DOC officials[2] and Georgia Power Company ("Georgia Power"). The substantially identical amended complaints alleged that, under Georgia's State Purchasing Act and as "lowest responsible bidders," the EMCs were entitled to receive licenses to supply certain electrical services to the DOC, which were awarded instead to Georgia Power in contravention of the state statute. Counts One and Two contended that by entering into the contracts with Georgia Power, the DOC defendants violated the EMCs' substantive and procedural due process rights, giving rise to § 1983 claims for injunctive relief and damages. Count Three asserted a state law cause of action based upon the same allegations. The district court initially dismissed the actions on the pleadings for failure to state a claim under § 1983, finding that the EMCs had no federally protected property interest in the contracts. In an earlier appeal from that decision a panel of this court reversed, holding that Georgia law requires electrical service contracts with the state to be awarded to the lowest

---

[2]Whitworth and Stovall were named as defendants in both actions. Evans was sued solely by Pataula Electric Membership Corporation.

responsible bidder "whenever possible." *Pataula Elec. Membership Corp. v. Whitworth,* 951 F.2d 1238, 1241-42 (11th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 302, 121 L.Ed.2d 225 (1992). The court explained that competitive bidding for electrical service is not possible in most cases because the Georgia Territorial Electric Service Act allows only one electricity supplier to provide service in a particular locality. *Id.* at 1241 n. 3. Here, however, more than one provider was eligible to furnish this service. The court consequently held that "there [was] no impediment to competitive bidding, [and] the State Purchasing Act and relevant rules mandate[d] competitive bidding." *Id.* at 1242. The court found further that, "[a]t a minimum, then, plaintiffs state[d] a cognizable [due process] claim by alleging that defendants abused their discretion by arbitrarily ignoring competitive bidding requirements." *Id.* at 1243. The court concluded that the DOC officials should have known they were required to follow competitive bidding procedures under clearly established state law, thus, they were not entitled to qualified immunity from § 1983 monetary liability. *Id.* at 1244.

On remand, the parties proceeded with discovery. Thereafter, Georgia Power and the DOC defendants filed motions for summary judgment. The motions addressed the merits of the actions and, in addition, the DOC officials again asserted a qualified immunity defense. The district court denied all the motions. The DOC officials then filed the current appeals, which have been consolidated for our review.

II. DISCUSSION

Although final orders have not been entered in these cases, we have jurisdiction to review the district court's denial of the motions for summary judgment grounded on qualified immunity. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411, 427 (1985). Our consideration of this issue is *de novo. Elder v. Holloway,* 510 U.S. ----, ----, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344, 351 (1994). This court's prior decision that the DOC defendants were not entitled to qualified immunity from § 1983 damages is binding here as the law of the case unless (1) new and substantially different evidence material to the issue has been presented; (2) controlling authority has been rendered which is contrary to the law of the previous decision; or (3) the earlier ruling was clearly erroneous and would work a manifest injustice if implemented. *United States v. White,* 846 F.2d 678, 685 (11th Cir.), *cert. denied,* 488 U.S. 984, 109 S.Ct. 537, 102 L.Ed.2d 568 (1988).

The main thrust of the current appeal is the defendants' insistence that, contrary to this court's earlier observation that there was no impediment to competitive bidding, later discovery revealed that it was impossible to determine a "lowest responsible bidder" because neither the EMCs nor Georgia Power could guarantee a fixed rate for electrical service over the life of the contracts. They also maintain that the EMCs failed to adhere to competitive bidding procedures. They claim that now it is clear that the EMCs did not in fact have a property right in the contracts because competitive bidding was either impossible and/or did not take place due to the EMCs' own failure to follow the competitive bidding

rules.  They postulate that, in the absence of a property interest, they are entitled to qualified immunity.

In keeping with the district court's decision, we must reject these arguments.  The record shows that the EMCs had sufficient awareness of the competitive bidding procedures to form a valid expectation of entitlement to the contracts if they submitted the lowest bids.  *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972).  The record also supports the district court's finding that the EMCs were the "lowest responsible bidders."  The appellants have offered no legal authority for their suggestion that the prospect of a subsequent rate increase rendered competitive bidding impossible.  Furthermore, there is undisputed evidence that the EMCs have refrained from retail rate increases in the past despite rises in wholesale costs.  The consultant employed by the DOC to analyze and evaluate the bids specifically found that Georgia Power had historically promulgated greater rate increases than the EMCs and that, over the long run, their rates would probably "approach each other."  For this reason, the consultant viewed the rate increase issue as an insignificant factor in determining cost over the life of the contracts.  By contrast, in choosing the EMCs, the DOC stood to realize definite and substantial savings in the shorter term, both in the rates charged and the cost of leasing equipment.  Consequently, this court's earlier decision that the EMCs were vested with a property right in the contracts remains the law of

the case.[3]

Even though the EMCs' rights to a property interest in the contracts remain, we nevertheless hold that because of a change in the law governing the viability of their due process claims, the defendants are now entitled to qualified immunity from § 1983 damages. In *McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994) (en banc), *cert. denied,* --- U.S. ----, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995), decided after the prior appeal in these cases, the court held that § 1983 substantive due process claims arising from nonlegislative deprivations of state-created property interests are no longer cognizable in this circuit. *Id.* at 1560.[4] It has also become evident, in light of *McKinney,* that the EMCs' procedural due process claims are not ripe for review. In *McKinney* the court observed that, unlike the deprivation of a right provided by substantive federal law, which gives rise to a § 1983 lawsuit as soon as the wrongful action is taken,

> a procedural due process violation is not complete "unless and until the State fails to provide due process." In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.

---

[3]We stress that the underlying finding that the EMCs were the lowest responsible bidders does not involve a factual dispute. The appellants do not contest the accuracy of the consultant's cost assessments. They urge simply that a future rate hike by any of the bidders would introduce an unknown element into the formula. Given the consultant's reasoned rejection of this factor as an obstacle to determining long-term costs, it was not impossible for the appellants to reach a competitive bidding decision.

[4]The alleged deprivations at issue here plainly stem from non-legislative acts, *see McKinney,* 20 F.3d at 1557 n. 9, and involve a state-created property right.

*Id.* at 1557 (quoting *Zinermon v. Burch,* 494 U.S. 113, 126, 110 S.Ct. 975, 983, 108 L.Ed.2d 100, 114 (1990)). Thus, even when a plaintiff has "suffered a procedural *deprivation* at the hands of [the state], he has not suffered a *violation* of his procedural due process rights unless and until the State ... refuses to make available a means to remedy the deprivation." *Id.* at 1563.

The Supreme Court of Georgia has held that "[w]hen, as here, a governmental entity has frustrated the bid process and awarded the contract to an unqualified bidder, the injured low bidder may bring an action for appropriate relief." *City of Atlanta v. J.A. Jones Constr. Co.,* 260 Ga. 658, 659, 398 S.E.2d 369, 370 (1990), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2042, 114 L.Ed.2d 126 (1991). One vehicle for bringing such an action in state court is O.C.G.A. § 50-5-79, through which contracts made in violation of the State Purchasing Act may be declared void.[5] *See also Amdahl Corp. v. Georgia Dep't of Admin. Servs.,* 260 Ga. 690, 695-97, 398 S.E.2d

---

[5]Section 50-5-79 provides:

> Whenever any department, institution, or agency of the state government required by this part and the rules and regulations adopted pursuant to this part applying to the purchase of supplies, materials, or equipment through the Department of Administrative Services shall contract for the purchase of such supplies, materials, or equipment contrary to this part or the rules and regulations made pursuant to this part, such contract shall be void and of no effect. If any official of such department, institution, or agency willfully purchases or causes to be purchased any supplies, materials, or equipment contrary to this part or the rules and regulations made pursuant to this part, such official shall be personally liable for the cost thereof; and, if such supplies, materials, or equipment are so unlawfully purchased and paid for out of the state funds, the amount thereof may be recovered in the name of the state in an appropriate action instituted therefor.

540, 544-46 (1990) (frustrated bidders who allege violations of state procurement laws may seek equitable relief and damages limited to the recovery of bid preparation costs under general principles of law); *Hilton Constr. Co., Inc. v. Rockdale County Bd. of Educ.,* 245 Ga. 533, 540, 266 S.E.2d 157, 162-63 (1980) (low bidder had right to damages and/or injunctive relief, to be determined by the trial court on remand).

The EMCs could have filed actions in state court pursuant to O.C.G.A. § 50-5-79 for the purpose of rescinding the contracts with Georgia Power and/or to recover their bid preparation costs.[6] Because they failed to do so, and because the rule of law announced in *McKinney* must be applied retroactively, *McKinney,* 20 F.3d at 1566, their § 1983 procedural due process claims are not actionable.[7]

---

[6]By this statement, we do not intend to imply that this was the sole course of action available to the EMCs under Georgia law. We point out only that the state provided an adequate process for redressing the EMCs' complaints.

[7]Although the effect of *McKinney* on the EMCs' due process claims was not resolved in the district court, we have the authority to address this pure question of law on appeal. *See Skinner v. City of Miami, Fla.,* 62 F.3d 344, 347-48 (11th Cir.1995) (following *McKinney* to hold that the complaint failed to state a constitutional claim even though the issue was not raised by the defendant in the district court or on appeal); *Narey v. Dean,* 32 F.3d 1521, 1526-28 (11th Cir.1994) (recognizing for the first time on appeal that the plaintiff's substantive and procedural due process claims were eviscerated in light of *McKinney* ); *see also Plaut v. Spendthrift Farm, Inc.,* 514 U.S. ----, ----, 115 S.Ct. 1447, 1450, 131 L.Ed.2d 328, 339 (1995) (a new rule of federal law applied to the parties in the case announcing the rule must be utilized in all cases pending on direct review) (citing *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991)). We note that the *McKinney* decision was issued after the motions for summary judgment and supporting briefs were filed, but before the district court entered its orders. It would have behooved the defendants to file supplemental briefs bringing *McKinney* to the

In *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), the Supreme Court observed that a "necessary concomitant" to the decision of whether a defendant is entitled to qualified immunity, "is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Id.* at 232, 111 S.Ct. at 1793, 114 L.Ed.2d at 287. The complaints in the present cases state neither substantive nor procedural due process claims. Consequently, we must reverse the district court's denial of qualified immunity from § 1983 damages.

Even though no federal rights remain to be determined in these cases, the EMCs may be permitted to pursue the state law cause of action raised in Count Three of their amended complaints in the federal forum. The decision of whether to dismiss a complaint still containing state law issues after all federal causes evaporate is within the district court's sound discretion. *See* 28 U.S.C. § 1367(c); *McCoy v. Webster,* 47 F.3d 404, 408 (11th Cir.1995). These actions present the unusual circumstance that, at the time the complaints were filed, it was common practice in this

---

district court's attention after that decision was published. In its orders denying the motions for summary judgment, the district court astutely invited them to do so. They chose instead to immediately appeal the district court's rulings on the qualified immunity issue. Perhaps they feared that the time for appeal would expire during the pendency of supplemental pleadings. However, the question of qualified immunity could have been preserved for review, with the benefit of a full exploration of the *McKinney* issues in the district court, and this appeal possibly avoided, if the defendants had served timely Fed.R.Civ.P. 59 motions to alter or amend the district court's denials of summary judgment in view of *McKinney.* *See* Fed.R.App.P. 4(a)(4)(C) (tolling the time for appeal during the pendency of a timely Rule 59 motion). At the oral argument before this court, the parties were directed to and did address the effect of *McKinney* on the due process claims.

circuit to bring § 1983 lawsuits in federal court asserting substantive and procedural due process claims arising from the deprivation of state-created property rights, without resorting to remedies made available by the state. In addition, we have held on occasion that it may be an abuse of discretion to dismiss an outstanding state law cause of action after the statute of limitations has expired. *See McCoy,* 47 F.3d at 408 n. 4. The district court should consider these factors in the exercise of its discretion and in reaching its decision.

## III. CONCLUSION

In accordance with the foregoing, we AFFIRM the district court's finding that the EMCs were vested with a state-created property right in the electrical service contracts as "lowest responsible bidders." We REVERSE the district court's denial of qualified immunity from § 1983 damages and REMAND the case to the district court for further proceedings with respect to the state law cause of action alleged in Count Three of the amended complaints.[8]

---

[8]In addition to the qualified immunity issue, the defendants urge us to review those portions of district court's orders denying summary judgment on the merits, which are relevant to the § 1983 claims lodged against them in their official capacities. *See Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 n. 2 (11th Cir.1994) (observing that the qualified immunity defense extends solely to § 1983 complaints for damages against state actors in their individual capacities). They maintain that we may do so by exercising pendent appellate jurisdiction in a manner consistent with *Swint v. Chambers County Comm'n,* 514 U.S. ----, ----, 115 S.Ct. 1203, 1212, 131 L.Ed.2d 60, 74-75 (1995) (leaving open the possibility of exercising pendent appellate jurisdiction in appropriate circumstances). Because of our holding that the complaints fail to allege a § 1983 cause of action of any sort, we find it unnecessary to address this contention.