[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
04/20/99
THOMAS  K. KAHN
CLERK

No. 98-8722

D. C. Docket No. 5:96-CV-483-2-DF

GEORGIA ADVOCACY OFFICE, INC.,
a Georgia nonprofit corporation and D.M., a child,

Plaintiffs-Appellants,

versus

LARUE T. CAMP, as County Director of
Jasper County Department of Family and
Children Services; JASPER COUNTY
DEPARTMENT OF FAMILY AND CHILDREN
SERVICES, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Georgia

**(April 20, 1999)**

Before HULL and MARCUS, Circuit Judges, and RONEY, Senior Circuit Judge.

HULL, Circuit Judge:

Appellant Georgia Advocacy Office, Inc. ("GAO") seeks to protect and advocate the

rights of individuals "with mental illness" pursuant to the  Protection and Advocacy for

Individuals with Mental Illness Act ("PAIMI Act").  42 U.S.C. §§ 10801-10807.  As a provider

of legal and advocacy services, GAO claims to represent D.M., a minor whom GAO alleges is an "individual with mental illness" for purposes of the PAIMI Act. GAO filed suit on behalf of itself and D.M. against the individuals and organizations (referred to collectively as "Defendants") who allegedly were blocking GAO's access to D.M. and to the Methodist Home for Children and Youth in Macon, Georgia (the "Methodist Home"), where D.M. resides. GAO claims that this denial of access violated the PAIMI Act and the Georgia Constitution.

After denying GAO's several requests for injunctive relief, the district court ultimately dismissed this action on the grounds (1) that no actual case or controversy involving access to D.M. existed because D.M. did not wish to be represented by GAO and (2) that GAO's claims involving general access to the Methodist Home involved injuries that were too speculative to create a substantial justiciable controversy. GAO, on behalf of itself and D.M., appeals. After review, we affirm the district court's dismissal of this action.

## I. BACKGROUND

### A. D.M. Reportedly Requests GAO Representation

In May 1995, the Juvenile Court of Jasper County, Georgia, placed D.M., then a minor, in the temporary legal custody of the Jasper County Department of Family and Children Services ("DFCS"). Subsequently, in November 1995, DFCS and Georgia's Multi-Agency Team for Children ("MATCH") Committee placed D.M. in West Central Georgia Regional Hospital ("West Central").

GAO asserts that its legal and advocacy representation of D.M. commenced on February 13, 1996, when D.M. telephoned GAO and requested legal assistance in connection with her status as a patient at West Central. According to GAO, D.M.'s initial request was for GAO to

2

assist her in being released from West Central to a less restrictive environment, and in particular, a foster family setting. On November 4, 1996, D.M. was moved from West Central to the Methodist Home by DFCS and Georgia's MATCH Committee.

## B. Methodist Home

The Methodist Home is a group home that offers a program of small group living in an open residential setting with as much contact and integration with the community as possible. Approximately ninety children and youth live at the Methodist Home. The parties dispute whether any of the Methodist Home residents are "individuals with mental illness" for purposes of the PAIMI Act. Defendants argue that no residents fit this description. Defendants point out that no children or youth who present a danger to themselves or others will be admitted to the home and that residents must be able to function in public school.

GAO counters that there are individuals covered under the PAIMI Act at the Methodist Home. GAO observes that the Methodist Home provides mental health screening and evaluation, counseling, medication supervision, and education. In addition, a psychiatrist and a psychologist visit the Methodist Home several times each week.

GAO does not claim to have sought access to the Methodist Home prior to D.M. moving there. However, since D.M.'s arrival at the Methodist Home, GAO claims that GAO employees, in their capacities as D.M.'s legal counsel and as GAO representatives, have sought and have been denied access to D.M. at the Methodist Home. For example, on several occasions in late 1996 and early 1997, attempts by GAO employees to contact D.M. by telephone were denied because D.M. had lost telephone and visitation privileges shortly after arriving at the Methodist Home.

3

## C. Litigation

On December 16, 1996, GAO instituted this action on behalf of itself and D.M. against Defendants. In the complaint, GAO alleged that Defendants were violating the Georgia Constitution by blocking D.M.'s access to her GAO attorney. Ga. Const. art. I, § 1, ¶ 12. In addition, GAO alleged that Defendants were violating the PAIMI Act, 42 U.S.C. § 10805(a)(1)(B) and (a)(3), by denying GAO access "to its client D.M. and to the Methodist Home."

After the commencement of this lawsuit, GAO and Defendants reached an agreement in late 1996 to allow Mrs. Anderson, who had been D.M.'s GAO advocate, to visit D.M. at the Methodist Home as a "visiting resource," not as a GAO representative. Mrs. Anderson continued to visit D.M. at the Methodist Home through July 1997. In July 1997, Mrs. Anderson requested permission for D.M. to come to Mrs. Anderson's home for an overnight visit. However, according to Defendants, Mrs. Anderson changed her mind after she was advised that an overnight visit might jeopardize GAO's legal position in this case. Defendants contend that D.M. began engaging in unacceptable behavior as a result of this event, culminating in D.M.'s running away from the Methodist Home to GAO's offices in Atlanta, Georgia. Consequently, the Methodist Home determined that it was "therapeutically necessary" to terminate Mrs. Anderson's "visiting resource" relationship with D.M.

Although it is clear that GAO requested access to the Methodist Home for purposes of visiting D.M., there is no allegation or evidence that GAO requested access to the Methodist

4

Home generally–for the purpose of providing information about GAO services to residents other than D.M., for instance.[1]

On September 17, 1997, GAO filed a motion for summary judgment. The district court deferred ruling on this motion until after discovery. Following the close of discovery in March 1998, Defendants filed their own joint motion for summary judgment. In April 1998, GAO and D.M. filed their response to Defendants' motion for summary judgment.

**D. In Camera Interview of D.M.**

D.M. decided on her own to speak to the district court judge. Accordingly, the district court conducted an in camera interview of D.M. No objections were raised to this interview, which took place on May 2, 1998. A transcript of the court's in camera interview is in the record.

On May 11, 1998, the district court dismissed the action and entered judgment for Defendants. In the order dismissing the action, the district court recites that during the interview, D.M. stated that she was not being mistreated at the Methodist Home and did not want or need a lawyer. The transcript of the interview also shows that D.M. stated that the "Methodist Home is a very nice program" and "a very good place," and that she had "matured a lot" since she had been there. According to the district court and the transcript, while D.M. desired to have

---

[1] We observe that GAO's complaint does not contain an allegation that GAO sought access to the Methodist Home generally for purposes such as providing information to residents about GAO services and that Defendants illegally denied general access to the Methodist Home for such purposes. Instead, GAO's complaint repeatedly alleges that GAO sought access to D.M. and that Defendants illegally denied access to D.M. The complaint's references to access to the Methodist Home are all in the context of D.M. While at the end of the complaint GAO includes a separate prayer for relief seeking access to the Methodist Home, there are no preceding allegations that GAO sought general access for purposes relating to residents other than D.M. and was illegally denied such general access.

a personal relationship with Mrs. Anderson, she had no interest in being represented by the attorneys at GAO. Based on the interview, the district court concluded that "[t]here can be no actual case or controversy involving access to D.M. if she does not wish to be represented."

As for GAO's claims for access to the Methodist Home generally, the district court found that GAO had offered no evidence about any minor, other than D.M., within the care of the Methodist Home, who might qualify for the protection of the PAIMI Act. Thus, the district court found that GAO could not show any harm or potential harm that would arise from GAO's limited access to the Methodist Home. Based on these findings, the district court determined that GAO's general-access claims were "too speculative to create a substantial justiciable controversy."

## III. DISCUSSION

### A. Access to D.M.

After review of the relevant portions of the record and the transcript of the district court's interview with D.M. in particular, we conclude that the district court correctly found that D.M. was not being mistreated at the Methodist Home, that D.M. did not wish to be represented by GAO, and hence that no ongoing attorney-client relationship existed. Because no ongoing attorney-client relationship existed, GAO had no right of access to D.M. and vice versa. Thus, the district court correctly concluded that there was "no actual case or controversy involving access to D.M." In any event, D.M. has turned eighteen recently and is remaining at the Methodist Home until she graduates from high school, which arguably moots at least part of GAO's claim.

### B. General Access to the Methodist Home

6

The district court also correctly dismissed GAO's claim for general access to the Methodist Home, albeit for the wrong reason. The PAIMI Act provides that a state protection and advocacy system "shall . . . have access to facilities in the State providing care or treatment." 42 U.S.C. § 10805(a)(3). Thus, GAO contends that it has a right of access to certain facilities covered by the PAIMI Act for the purpose of performing certain ombudsman-type functions under the PAIMI Act and regulations.[2] The district court dismissed GAO's claims for access to the Methodist Home generally on the basis that GAO offered no evidence that Methodist Home residents other than D.M. would qualify as "individuals with mental illness" for the protection of the PAIMI Act.

We conclude that the district court erred in making this evidentiary finding because there was sufficient evidence to indicate that a case or controversy exists about whether the Methodist Home did have other residents "with mental illness" who would qualify for the protection of the PAIMI Act. The PAIMI Act defines an "individual with a mental illness" as someone:

   (A) who has a **significant** mental illness or **emotional impairment**, as determined by a mental health professional qualified under the laws and regulations of the State; and
   (B)(i) who is an inpatient or resident in a facility rendering care or treatment, even if the whereabouts of such inpatient or resident are unknown.

42 U.S.C. § 10802(4) (emphasis supplied). The record contains evidence that a psychiatrist and a psychologist each visit the Methodist Home at least three times a week and that the Methodist Home

---

[2] For example, in certain circumstances a system "shall have reasonable unaccompanied access to residents at all times necessary to conduct a full investigation of an incident of abuse or neglect." 42 C.F.R. § 51.42(b). In addition, a system "shall have reasonable unaccompanied access to facilities . . . and to programs and their residents" for the purposes of (1) providing information and training about individual rights and about the services available from the protection and advocacy system, (2) monitoring compliance with respect to the rights and safety of residents, and (3) inspecting, viewing, and photographing all areas of a facility which are used by or accessible to residents. § 51.42(c).

provides mental health services including screening and evaluation, counseling, medication supervision, and education. Since the § 10802(4) definition includes significant "emotional impairment," we find the evidence was sufficient to create a case or controversy over whether the Methodist Home was a facility covered by the PAIMI Act and over whether the Methodist Home rendered care and treatment to residents "with a mental illness" as defined by the PAIMI Act. We emphasize, however, that our conclusion on this point simply would have allowed the case to proceed to be considered on the merits and would not have constituted any finding or indication of the merits of the issues of whether the Methodist Home is "a facility" covered by the PAIMI Act or has residents who qualify for PAIMI Act protection.

Although this finding is erroneous, the district court, nonetheless, correctly dismissed GAO's complaint for lack of a live case or controversy. There was no allegation or evidence that GAO had requested access to the Methodist Home generally for purposes of providing information to or assisting residents outside of the context of D.M. No such evidence was introduced with the summary judgment motions or at any other time in the record. Moreover, it is not clear how the Methodist Home and other Defendants would respond to such a request. In other words, GAO's general-access claim involves merely an abstract or hypothetical dispute.

Thus, we find that GAO's general-access claim is not ripe for judicial review. See Socialist Workers Party v. Leahy, 145 F.3d 1240, 1244-47 (11ᵗʰ Cir. 1998) (explaining the "[t]hree strands of justiciability doctrine–standing, ripeness, and mootness"). As this circuit repeatedly has stated, to determine whether a claim is ripe, a court must examine """whether there is sufficient injury to meet Article III's requirement of a case or controversy, and if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete to permit effective decisionmaking by the

8

court.""" Id. at 1244 (quoting Digital Properties, Inc. v. City of Plantation, 121 F.3d 586, 589 (11th Cir. 1997) (quoting Cheffer v. Reno, 55 F.3d 1517, 1524 (11th Cir. 1995))). GAO has not shown sufficient injury and its general-access claim is not sufficiently mature to permit effective decisionmaking by the court. Thus, although for a different reason than stated by the district court, we conclude that GAO's general-access claim at this juncture is "too speculative to create a substantial justiciable controversy" and should be dismissed.

In dismissing GAO's general-access claim, the district court did not specify whether the dismissal was with prejudice or without prejudice. However, we clarify that the dismissal of this claim should be considered a dismissal without prejudice. Because the general-access claim was not ripe for review, the district court did not have subject matter jurisdiction over the claim. See Digital Properties, Inc. v. City of Plantation, 121 F.3d 586, 591 (11th Cir. 1997) ("The determination of ripeness 'goes to whether the district court had subject matter jurisdiction to hear the case.'" (citing Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.7 (11th Cir. 1989))). Thus, the district court could not have adjudicated the merits of the general-access claim or dismissed that claim with prejudice. See Crotwell v. Hockman-Lewis Ltd., 734 F.2d 767, 769 (11th Cir. 1984) (changing a dismissal "with prejudice" to a dismissal "without prejudice" on the basis that "the court lacked subject matter jurisdiction over the action" and hence "had no power to render a judgment on the merits").[3]

_____

[3]We also note that the Methodist Home contends that GAO's general-access claim lacks merit because the Methodist Home already has existing systems in place to protect the rights of its residents, that GAO may supply such services but not supplant existing services, that there was no evidence of any abuse or neglect at the Home to justify any access by GAO, that GAO failed to follow the PAIMI Act's regulations that require each system, like GAO, to attempt first to resolve disputes through negotiation and mediation before commencing litigation, and that GAO failed to establish other jurisdictional requirements for their claims. Nothing herein should

**AFFIRMED.**

be construed as any ruling on those issues raised in this case.

10