Chris **HORTON** and James E. Gardner, Plaintiffs–Appellees,

v.

**BOARD OF COUNTY COMMISSIONERS OF FLAGLER COUNTY, etc.,** Defendants–Appellants.

No. 98–2911.

United States Court of Appeals, Eleventh Circuit.

Feb. 1, 2000.

Alan K. Ragan, Susan Smith Erdelyi, Marks, Gray, Conroy & Gibbs, P.A., Jacksonville, FL, Albert J. Hadeed, Flagler Beach, FL, for Defendants–Appellants.

Richard M. Goldstein, Susan E. Trench, Goldstein & Tanen, P.A., Lisa Rochelle Harris, Hollander & Bartelstone, P.A., Miami, FL, for Plaintiffs–Appellees.

Before TJOFLAT and CARNES, Circuit Judges, and RONEY, Senior Circuit Judge.

CARNES, Circuit Judge:

Chris Horton and James Gardner, Jr., the plaintiffs in this case, own land in Flagler County, Florida. They filed a 42 U.S.C. § 1983 action in state court against the County Board of Commissioners, claiming that the Commissioners had deprived them of substantive due process, procedural due process, and equal protection by establishing a moratorium that prevented them from developing their land. Their complaint also claimed the Commissioners had violated the Florida Constitution and Florida laws. The Commissioners removed the case to federal district court, which dismissed the equal protection and substantive due process claims on the merits but remanded the federal procedural due process and state law claims to state court. The defendants have appealed.

This appeal presents us with the question of whether a federal court should remand a federal procedural due process claim to state court on *McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994) (en banc), grounds. We conclude that the answer is "no" and that the remand in this case was based upon a misunderstanding of *McKinney,* but we also conclude that we are without jurisdiction to correct the error.

## I. BACKGROUND [1]

The plaintiffs bought land located in Palm Coast, Florida, zoned R–3, a zoning designation which permits multiple family apartments. They purchased the land in order to develop an apartment community which would include housing for low or moderate income households. They were planning to develop the land in accordance with the Flagler County Comprehensive Plan, a county program encouraging the development of affordable housing and its integration into the community. On December 2, 1996, the plaintiffs applied for an exception to develop ten housing units per acre of land rather than eight units per acre, the limitation imposed by the Comprehensive Plan. Public notice was given that the plaintiffs' application for an exception would be discussed at a Flagler County Commission hearing on January 14, 1997. Palm Coast property owners began what the complaint describes as "vocal and aggressive campaign" to stop the development.

On January 14, 1997, the plaintiffs entered into a contract to sell the property to TWC Eighty–Four, Ltd., which planned to construct an apartment building providing low or moderate income housing. However, on February 3, 1997, the Commissioners adopted a measure imposing a moratorium on the development of certain property within an R–3 zone. As a result, TWC Eighty–Four, Ltd. refused to close on the sale of the property.

The plaintiffs then filed an action in state court against the Commissioners in their individual capacities, claiming that they had deprived the plaintiffs of substantive due process, procedural due process, and equal protection by establishing the moratorium that prevented the development of property within an R–3 zone. They also claimed the Commissioners' ac-

1. Because the district court took action based upon the complaint itself without considering any evidentiary submission, the facts we set out here are drawn from the complaint, which we assume for present purposes states the truth. *See Jackson v. Okaloosa County, Florida,* 21 F.3d 1531, 1534 (11th Cir.1994).

tions had violated the Florida Constitution and Florida laws.

The Commissioners responded by removing the case to federal district court pursuant to 28 U.S.C. § 1441(b). Once the action was removed, the Commissioners moved to dismiss it for failure to state a claim. The district court dismissed the substantive due process and equal protection claims on the merits. However, the district court did not dismiss the federal procedural due process claim; instead, the court remanded that claim and the state law claims back to the state court from whence they came. The entire initial explanation the district court gave for remanding the removed federal procedural due process claim to state court follows:

> Defendant argues that Plaintiffs' procedural due process claim should also be dismissed because Plaintiffs have not pursued a remedy in state court. *See, e.g., Flint Electric Membership Corp. v. Whitworth*, 68 F.3d 1309, 1313–14 (11th Cir.1995). The Court notes that Plaintiffs were pursuing a remedy in state court, at which time the Defendants removed the action to this Court. *See* Notice of Removal (Doc. No. 1, filed July 1, 1997). However, because Plaintiffs cannot show that the state has failed to provide an adequate remedy, the claim is not properly before this Court at this time. *See North Florida Educational Development Corp. v. Woodham*, 942 F.Supp. 542, 550 (N.D.Fla.1996) (Plaintiff's "procedural due process claims must be dismissed because Florida courts have not failed to provide [Plaintiff] with such process."). Accordingly, Plaintiff's procedural due process claim will be remanded back to the state court. Further, to the extent that Plaintiffs have alleged claims under state law,

these too are remanded to the state court.

Order of April 2, 1998 (footnote omitted).[2]

The Commissioners then filed a motion to clarify that order, which the district court granted. In the pertinent part of its clarification order, the court gave this additional explanation for remanding the federal due process claim:

> Defendants' Motion for Clarification is GRANTED. As noted in the Court's Order on Defendants' Motion to Dismiss, Plaintiffs' federal procedural due process claim was not properly before this Court because Plaintiffs had not shown that the state failed to provide an adequate remedy; however, Defendants removed the above-styled action from state court to this Court while Plaintiffs were attempting to pursue a state remedy. *See* Order (Doc. No. 25, filed April 2, 1998). The Court concluded—and reaffirms now—that dismissing Plaintiffs' federal procedural due process claim from their Complaint would be inappropriate in light of the fact that it was the Defendants who obstructed the Plaintiffs' attempt to obtain a state remedy. Thus, the undersigned "dismissed" Plaintiffs' claim from this Court and remanded to the state court for disposition thereof.[1] The state court is equally capable of adjudicating a claim based on the United States Constitution.
>
> [1] The Court concluded that Defendants' removal based on this claim could not stand.

Order of May 29, 1998.

## II. DISCUSSION

■■■ The district court mistakenly thought the rule of our *McKinney* decision is based on ripeness or exhaustion principles and turns on whether the federal procedural due process claim in a particular case has been presented to the state courts by the plaintiff seeking to pursue that

2. In the omitted footnote, the district court stated that it could not decide whether the Commissioners were entitled to legislative immunity because there were disputed factual issues. The court did not explain why it failed to decide those factual issues before remanding the case.

claim in federal court. But the *McKinney* rule does not turn on whether a plaintiff has presented the claim to the state courts, because the rule is not based on ripeness or exhaustion principles. *See McKinney,* 20 F.3d at 1564 n. 20 ("McKinney's case fails, therefore, not for want of exhaustion; indeed, exhaustion is irrelevant to our decision and finds no mention in the opinion.") Instead, *McKinney* is based on a recognition that the process a state provides is not only that employed by the board, agency, or other governmental entity whose action is in question, but also includes the remedial process state courts would provide if asked. *See id.* at 1561–65. That is why we said in our opinion: "Since the Florida courts possess the power to remedy any deficiency in the process by which McKinney was terminated, McKinney cannot claim that he was deprived of procedural due process." *Id.* at 1565. McKinney was complaining of a biased decisionmaker at the board level, but under Florida law an adequate remedy for that could be obtained in the state courts. So, McKinney had an opportunity for procedural due process and that is all the Fourteenth Amendment requires. *See id.* at 1561–65.

The *McKinney* rule is not micro in its focus, but macro. It does not look to the actual involvement of state courts or whether they were asked to provide a remedy in the specific case now before the federal court. Instead, the *McKinney* rule looks to the existence of an opportunity— to whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered. If state courts would, then there is no federal procedural due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so. If state courts generally would not provide an adequate remedy for that type of procedural deprivation, then the federal court determines whether the

Fourteenth Amendment Due Process Clause requires such a remedy, and if it does, the federal court remedies the violation. Either way, the federal court decides the federal procedural due process claim; that claim is not sent back to state court. (But pendent state law claims may be. *See infra* n.3.) ·

The district court emphasized in its orders that the plaintiffs in this case were attempting to obtain a state court remedy for the procedural deprivation they claimed when the defendants removed the case to federal court. The district court characterized the defendants' removal as having "obstructed the Plaintiffs' attempt to obtain a state remedy." Order of May 29, 1998. The implication is that unless the federal procedural due process claim is sent back to state court, the plaintiffs cannot obtain whatever state remedy exists for the underlying procedural deprivation. But they can obtain the state remedy without an accompanying federal claim. Moreover, because of our supplemental jurisdiction under 28 U.S.C. § 1367(a), federal courts can and do adjudicate state law claims and provide remedies for those claims.

There is no danger that plaintiffs who have been deprived of property without the procedural protections the Fourteenth Amendment guarantees will be left without a remedy by the proper application of the *McKinney* rule. The existence of an adequate state law remedy for the claimed deprivation is a prerequisite to the application of the rule. Only after a federal district court determines that an adequate state remedy does exist—which is another way of saying that state law does not leave the plaintiff with a procedural deprivation that cannot be remedied in state court— will the district court apply the *McKinney* rule to hold that there has been no federal due process violation. If the court determines that there is no adequate state remedy, then the *McKinney* rule does not apply.[3]

---

3. Faced with a § 1983 complaint alleging that a board, agency, or other entity acting under state law has deprived a plaintiff of a proce-

dural guarantee protected by the Fourteenth Amendment, a federal district court could put

We think we understand the source of confusion about *McKinney*. Early in the opinion in that case, we describe pre-*McKinney* circuit law—the law we were overruling—as having granted a federal remedy in cases that, in effect, were not yet "ripe." *See id.* at 1560. The reference to ripeness was intended only as an analogy, but it was an unfortunate analogy to use because it has created some confusion. We also spoke in the *McKinney* opinion of the incompleteness of alleged violations, saying that "procedural due process violations do not become complete unless and until the state refuses to provide due process." *Id.* at 1562 (internal marks and citation omitted). Referring to procedural due process violations as "incomplete" was unfortunate, too, because that word conjures up thoughts of exhaustion, even though we explicitly stated that exhaustion had nothing to do with our decision or the rule it announced. *See id.* at 1564 n. 20.

The remainder of our *McKinney* opinion, and more importantly, its reasoning and holding establish that exhaustion and ripeness are not the doctrines in play, and

that the completeness of the procedural due process violation is decided by looking at existing state remedial law. *See id.* at 1563 ("It is to an examination of this state remedy—and a determination of whether it satisfies due process—that we now turn.") If the rule of *McKinney* were otherwise, we would have had to hold that McKinney's claim should have been dismissed as unripe. We would have had to do that because McKinney himself had never presented his federal due process claim in state court. *See id.* at 1563. But we did not tell McKinney his federal claim was unripe and dismiss it without prejudice to his pursuing that claim in state court. Instead, we told him that he lost. We told McKinney that he did not have a viable federal due process claim, and we told him the reason he did not is that Florida law provided an adequate remedy for the type of procedural deprivation McKinney claimed to have suffered, even though he had not taken advantage of that state remedy. *See id.* at 1561–65; *id.* at 1567 ("we therefore hold that there was no due process violation and, as a result, no section 1983 claim").[4]

the following question to the defendants: "If the evidence proves the claimed deprivation, does the plaintiff have an adequate state law remedy, and if so, what is it?" If the defendants answer "no," and the court is convinced that answer is correct, then the court should proceed with adjudication of the federal due process claim just as though *McKinney* had never been decided.

If, however, the answer to the question about an adequate state remedy is "yes," then the federal district court can proceed to adjudicate the state law claims over which it will have supplemental jurisdiction. (If the plaintiff has not pleaded a state law claim upon which the state remedy can be based—as the plaintiff in this case has and most plaintiffs usually do—the federal court can permit the plaintiff to amend the complaint to add such a claim.) If the plaintiff proves his case on the state law claim, the district court can provide the adequate state law remedy. Of course, if there is a valid basis for doing so under 28 U.S.C. § 1367(c), the district court can decline to exercise its supplemental jurisdiction over the state law claim or claims. If that is what the district court does, the plaintiff will be able to pursue the adequate state law rem-

edy in the state courts without the threat of having the case removed to federal court because of the federal due process claim, which will have been dismissed on the merits by the district court because of the existence of the adequate state law remedy.

4. The district court in this case cited the panel decision in *Flint Electric Membership Corp. v. Whitworth*, 68 F.3d 1309, 1313–14 (11th Cir. 1995). That opinion originally contained the following sentence: "It has also become evident, in light of *McKinney*, that the EMCs' procedural due process claims are not ripe for review." *Id.* at 1313. That sentence was withdrawn on rehearing, however, and the *Flint* panel substituted for it the following one: "It has also become evident, in light of *McKinney*, that the EMCs failed to state a procedural due process claim." *Flint Electric Membership Corp. v. Whitworth*, 77 F.3d 1321 (11th Cir.1996) (on rehearing). In other words, like the district court in this case, the *Flint* panel initially misread *McKinney* as a ripeness decision, but the panel corrected that mistake on rehearing and modified its opinion to indicate that *McKinney* has to do with whether a procedural due process claim has been stated at all.

For the reasons we have set out, we think the district court in this case should not have remanded the plaintiffs' federal due process claim to state court. We think it should have reached a decision, one way or the other, on the merits of that claim using the same manner of analysis that we employed to decide the merits of the procedural due process claim in *McKinney*. Our thoughts to this effect do not require or permit us to reverse the district court's order, however, because we lack jurisdiction to review it. We lack jurisdiction to review the district court's order because it remanded the case on exhaustion or ripeness grounds, or on some combination of the two. *See* Order of April 2, 1998 (explaining remand is because "Plaintiffs have not pursued a remedy in state court" and "the claim is not properly before this Court at this time"); Order of May 29, 1998 ("Plaintiffs' federal procedural due process claim was not properly before this Court...."). Even if we think a district court erred in remanding a removed case to state court on ripeness or exhaustion grounds, we still lack jurisdiction to review and reverse that judgment. *See* 28 U.S.C. § 1447(d); *In re Decorator Industries, Inc.*, 980 F.2d 1371, 1374 (11th Cir.1992) (cases remanded for lack of jurisdiction are immune from review even if the district court's decision is clearly erroneous); *Georgia Advocacy Office, Inc. v. Camp*, 172 F.3d 1294, 1299 (11th Cir.1999) (district court lacks subject matter jurisdiction over an unripe claim); *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 591 (11th Cir.1997) ("The determination of ripeness 'goes to whether the district court had subject matter jurisdiction to hear the case.'" (citation omitted)).

Our conclusion that we lack jurisdiction to review the district court's order remanding the federal due process claim to state court means, of course, that our discussion earlier in this opinion about the meaning of the *McKinney* decision is dicta and not binding on anyone. We freely acknowledge as much, but even though not binding, dicta sometimes can be useful.

*See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1314–15 (11th Cir.1998) (Carnes, J., concurring) ("Somewhat like statements in a law review article written by a judge, or a judge's comments in a lecture, dicta can be used as a vehicle for offering to the bench and bar that judge's views on an issue, for whatever those views are worth."). In *Combs v. Plantation Patterns*, 106 F.3d 1519, 1524, 1527, 1532–38 (11th Cir.1997), we used what we acknowledged to be dicta in an attempt to dispel confusion caused by a prior opinion, leaving it to the reader to decide whether the attempt was successful. We think it equally appropriate to use dicta here, in an attempt to correct what we perceive to be a misunderstanding about the meaning of one of our prior decisions. As in *Combs*, we leave it to the reader to determine whether we have been successful in that attempt.

### III. CONCLUSION

The appeal is DISMISSED for lack of jurisdiction.

RONEY, Senior Circuit Judge, dissenting:

I respectfully dissent. In my judgment, the district court's conclusion that removal of the procedural due-process claim was improper while the plaintiffs were in the midst of seeking a remedy in state court was not a jurisdictional determination, but rather, a determination that the plaintiffs had not stated an actionable procedural due-process claim on the merits in accordance with *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir.1994) (en banc). Of course, I agree with the majority's discussion of *McKinney*, but I think it is that analysis which undergirds the district court's decision, even though it was not perfectly articulated in the district court order. I would hold that the district court's order is reviewable by us on appeal.

In its original order, the district court stated the claim was not properly in its

court and observed that plaintiff was in pursuit of a post-deprivation remedy in state court at the time the suit was removed. The juxtaposition of these two facts is not evidence that the district court read into the *McKinney* rule a ripeness or exhaustion requirement. Instead, it is an acknowledgment that an adequate state remedy exists. The availability of the state procedure at the time of the pleading defeats the claim even if plaintiffs had not been "in pursuit" through that procedure. The district court's clarifying order supports this reading. The court "dismissed" plaintiffs' claim. In my judgment, the district court's "remand" of the procedural due process claim along with the plaintiffs' state law claims was nothing more than a reflection that if plaintiff ever could assert a procedural due process claim in keeping with the *McKinney* rule, it could be asserted in state court, and was not a judgment based on ripeness or exhaustion. I would credit the district court with a proper understanding of *McKinney* and interpret its less than clear order accordingly. In effect, the district court dismissed the case for failure to state a claim, a decision on the merits reviewable on this appeal, which I would affirm.