[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11069

Non-Argument Calendar

_____

PAMELA KESSLER,
STUART KESSLER,

Plaintiffs-Appellants,

*versus*

CITY OF KEY WEST,
RONALD RAMSINGH,
GEORGE WALLACE,
JAMES K. SCHOLL,
City Manager,
GREG VELIZ,
Assistant City Manager, et al.,

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 4:19-cv-10030-JEM

————————————

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Pamela and Stuart Kessler sued the City of Key West and many of its officials after the City, following a code-enforcement dispute, terminated the Kesslers' lease to a boat slip at a City-operated marina. The Kesslers alleged a variety of claims under 42 U.S.C. § 1983, including that the City's course of conduct against them violated their rights to procedural and substantive due process, denied them equal protection, and deprived them of property without just compensation. The district court denied the Kesslers' request for a preliminary injunction and then dismissed their second amended complaint with prejudice for failure to state a plausible claim to relief. After careful review, we affirm in part and vacate and remand in part.

I.

Between 2004 and 2017, the Kesslers' primary residence was a floating home docked at a marina operated by the City in a

community of about 100 floating homes.  The Kesslers leased their spot at the marina —a "boat slip"—from the City.  By 2018, however, the Kesslers had lost their home, their boat slip, and much of their personal property.  The gist of their lawsuit is that the City unreasonably escalated a minor code violation relating to their floating home, abused the legal process to terminate the lease and get rid of them, and indirectly caused the loss of their home.

The alleged code violation arose in 2016, when a contractor hired by the City to replace the pier where the Kesslers' floating home was moored began the process of temporarily relocating floating homes.  During this process, the contractor notified the City of safety concerns related to "numerous barrels loosely secured" to the underside of the Kesslers' floating home.  The City determined that this setup violated § 14-185 of the City Code and, after informal attempts to resolve the matter with the Kesslers failed, gave notice of an administrative hearing before a special magistrate in January 2017.

Instead of appearing at the hearing, which they believed would be futile, the Kesslers filed a notice purporting to remove the proceedings to federal district court.  The City ignored the notice of removal and proceeded with code-enforcement proceedings, which resulted in a finding that the Kesslers' floating home violated § 14-185.  The City eventually responded in federal court in June 2017, at which time the district court "dismissed" the case "with prejudice" for lack of subject-matter jurisdiction.

Thereafter, the City filed a complaint in state court to evict the Kesslers based on the code violation. The Kesslers filed a motion to dismiss, arguing that the code-enforcement proceedings were void due to the automatic stay upon removal to federal court and that the federal court had "dismissed" the underlying code violation. At a hearing in January 2018, a state judge indicated he was inclined to grant the motion to dismiss. Not long after, the City voluntarily dismissed its complaint.

Meanwhile, in September 2017, the Lower Keys and Key West were struck by Hurricane Irma. By that time, the Kesslers had voluntarily removed the loosely secured barrels—what they call "safety reserve floatation"—from under their home. Nevertheless, unlike many other floating homes at the marina, the Kesslers' home survived the storm with minimal damage. But, on December 3, 2017, it was struck by a large piece of floating debris, which punctured a "catastrophic hole" in one of the home's four primary integrated pontoons and caused it to sink. The Kesslers believe their home would not have sunk had the City not "intimidated" them into removing the reserve floatation.

After dismissing the eviction case, the City gave notice that it intended to terminate the Kesslers' lease. According to the operative 2007 lease agreement, if the City decided "not to renew the tenancy, it shall provide [the Kesslers] both thirty (30) days' notice and the option of a hearing before the Port Advisory Board." But the City advised Plaintiffs that any hearing they requested would be conducted by the City Manager because the Port Advisory

Board, which had consisted of citizen volunteers, had been disbanded. The Kesslers requested a hearing and attended under protest.

At the hearing, according to the Kesslers, the City did not offer cause to terminate the lease and instead described them as good tenants, and a deputy City attorney prevented testimony on the alleged code violation because "the matter had been judicially resolved in the Kesslers' favor." The City Manager assured them after the hearing that their lease would not be terminated. But the City Manager then issued a decision terminating the lease effective March 1, 2018.[1] In September 2018, the City shut down the Kesslers' utility accounts for the boat slip, removed the Kesslers' remaining personal property, and gave the boat slip to a new tenant.

## II.

In February 2019, the Kesslers sued the City and various City officials in federal district court. As relevant here, Count I of the operative second amended complaint requested that the court issue an injunction to put the Kesslers into possession of their former boat slip. Counts II through V sought damages under § 1983 for a deprivation of property without procedural due process (Count II), a taking of property for a public purpose without the payment of

---

[1] This fact was not alleged in the Kesslers' pleadings, but we may consider the City Manager's decision, which was submitted at the hearing on preliminary injunctive relief, because it is central to the claims and its authenticity is not disputed. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

6                    Opinion of the Court                    21-11069

just compensation (Count III), a deprivation of property resulting from a violation of substantive due process (Count IV), and a denial of equal protection (Count V).  Counts VI through IX asserted parallel § 1983 claims against City officials in their individual capacities.[2]

The Kesslers sought damages for the value of the leasehold interest ($100,000), the value of the floating home and its contents ($300,000), and the loss of salary and benefits to Mrs. Kessler stemming from their relocation (around $220,000).  The Kesslers explained that there was an "active market for the sale and assignment of boat slip leases, which the City participates in by collecting 5% of the sale price."  They further indicated that slip leases were desirable because there were a "series of interlocal agreements and prior Court settlements protecting the rights of the Liveaboard Slip Lessees."

The district court granted the defendants' motion to dismiss for failure to state a claim based on a report and recommendation from a magistrate judge.  In relevant part, the court concluded that (a) the Kesslers failed to state a procedural-due-process or takings claim because they did not pursue state remedies or plead how those remedies were inadequate; (b) substantive due process did not protect the infringement of a state-created property interest by non-legislative action; (c) the Kesslers failed to demonstrate a

---

[2] Counts X and XI were directed at individual defendants who were dismissed from the case in May 2020.

similarly situated comparator for their equal-protection claim based on selective enforcement of the ordinance; and (d) the request for injunctive relief was entirely derivative of the other claims and so could not stand on its own.  This appeal followed.

## III.

We review *de novo* the grant of a motion to dismiss for failure to state a claim to relief, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.  *Karantsalis v. City of Miami Springs, Fla.*, 17 F.4th 1316, 1319 (11th Cir. 2021).  We review the denial of a preliminary injunction for an abuse of discretion.  *Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (*en banc*).

To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quotation marks omitted).  That means the complaint's non-conclusory factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Kesslers maintain that the City's interference "with their continued occupancy in their home without providing constitutionally adequate due process violates the Kesslers' Procedural Due Process Rights, the Takings Clause, [] Substantive Due Process," and their right to equal protection of the laws.  They further

claim that, contrary to the district court's ruling, no exhaustion of state remedies was required for any of their claims.

### A.  Procedural Due Process

In the operative second amended complaint, the Kesslers alleged that they were deprived of due process when, in their view, the City sidestepped the required eviction process and terminated the lease without providing a neutral review board as contemplated in the lease.  And they contend on appeal that the district court erred by requiring them to exhaust state remedies before proceeding in federal court.

"In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).  When state law provides an adequate means to remedy the alleged procedural deprivation, there is no due-process violation regardless of whether the plaintiff availed himself of that remedy. *See McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (*en banc*); *Horton v. Bd. of Cnty. Comm'rs of Flagler Cnty.*, 202 F.3d 1297, 1300 (11th Cir. 2000).

The Kesslers are correct insofar as the viability of their claim "does not turn on whether [they] presented the claim to the state courts." *Horton*, 202 F.3d at 1300.  But even if we accept that the Kesslers have sufficiently alleged a deprivation of a procedural-due-process right, a constitutional-due-process violation occurs only

21-11069                Opinion of the Court                9

when the state refuses to provide a process adequate to remedy that procedural deprivation. *See McKinney*, 20 F.3d at 1557, 1563; *Horton*, 202 F.3d at 1300. "The question is thus whether the state provided [the Kesslers] with the means to present [their] allegations, demonstrate that the [lease termination] was wrongful, and receive redress from that deprivation," whether they used that process or not. *Reams v. Irvin*, 561 F.3d 1258, 1266 (11th Cir. 2009).

Here, the Kesslers alleged no facts showing that they asked for remedial procedures, that the state refused to make available such procedures, or that the state's procedures were otherwise unavailable or inadequate to remedy the alleged procedural deprivation. Nor have they addressed the adequacy of state remedies on appeal, instead claiming they were not required to exhaust such remedies. But whether they attempted to avail themselves of state remedies or not, the dispositive question is whether those remedies were available. Even liberally construing their briefing, the Kesslers do not dispute the district court's determination that adequate remedies were available, and so have abandoned the issue.[3] *See*

---

[3] Even assuming no specific legal remedies were available, it appears the Kesslers could have sought mandamus relief. In *Cotton v. Jackson*, we held that mandamus relief under Georgia law was adequate to remedy a procedural deprivation even assuming the plaintiff was "without another legal remedy." 216 F.3d 1328, 1332–33 (11th Cir. 2000). Because the essentials of mandamus relief in Florida appear to be same as in Georgia, mandamus likewise appears to be adequate here even assuming the Kesslers lacked another legal remedy. *Compare id.* (describing mandamus relief in Georgia), *with, e.g.*, *Hasam Realty Corp. v. City of Hallandale*, 393 So. 2d 561, 563 (Fla. Dist. Ct. App. 1981) (describing mandamus relief in Florida). *See also City of Miami v. State ex rel.*

*Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("[I]ssues not briefed on appeal by a *pro se* litigant are deemed abandoned."). Accordingly, we affirm the dismissal of the procedural due process claim.

### B.  Substantive Due Process

The district court also properly dismissed the Kesslers' sub-stantive-due-process claim.  "The substantive component of the Due Process Clause protects those rights that are fundamental, that is, rights that are implicit in the concept of ordered liberty."  *McKin-ney*, 20 F.3d at 1556.  For a right to be fundamental, it must be cre-ated by the Constitution. *Greenbriar Village, L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1262 (11th Cir. 2003).  "Property inter-ests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or under-standings that stem from an independent source such as state law."  *Board of Regents v. Roth*, 408 U.S. 564, 577, (1972).  Therefore, "to the extent that [the Kesslers] predicate[] [their] substantive due pro-cess claim directly on the denial of [their] state-granted and -defined property right in the [lease or boat slip], no substantive due process claim is viable." *Greenbriar Village*, 345 F.3d at 1262.

The Kesslers maintain that the City's actions were arbitrary and irrational.  But we have held that "non-legislative deprivations of state-created rights, which would include land-use rights, cannot

---

*Houston*, 102 So. 2d 176, 177 (Fla. Dist. Ct. App. 1958) (granting mandamus relief from a decision by a city manager).

support a substantive-due-process claim, not even if the plaintiff alleges that the government acted arbitr[arily] and irrationally." *Id.* at 1263. In this case, the City's lease-termination decision was an executive act, not a legislative one. *See, e.g.*, *Hillcrest Prop., LLP v. Pasco Cnty.*, 915 F.3d 1292, 1299–1300 (11th Cir. 2019) (distinguishing between legislative and executive acts). Because even an arbitrary and irrational non-legislative deprivation of a property right cannot support a substantive-due-process claim, we need not consider the Kesslers' arguments on this point.

To the extent a substantive-due-process claim would still be available for conduct that "shocks the conscience," the City's alleged conduct here—pursuing code enforcement, eviction, and then termination of the lease once the Kesslers' floating home no longer occupied the boat slip—does not plausibly meet that standard. *See, e.g.*, *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1375 (11th Cir. 2002) ("As a general rule, to prevail on a claim of a substantive due-process violation, a plaintiff must prove that a defendant's conduct 'shocks the conscience.'").

## C. Equal Protection

We also affirm the dismissal of the Kesslers' equal-protection claim. The Kesslers assert that they stated a plausible equal-protection claim as a class of one.[4] But their allegations are insufficient to state a plausible claim under that theory.

---

[4] The Kesslers also assert that they stated a plausible claim as members of a protected class, but nothing in their pleadings suggests that the City treated

"[T]he Equal Protection Clause requires government entities to treat similarly situated people alike." *Campbell v. Rainbow City*, 434 F.3d 1306, 1313 (11th Cir. 2006). Plaintiffs can bring equal-protection claims as a class of one if they assert (1) intentional (2) treatment that is different from treatment of similarly situated others, (3) with no rational basis. *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1201 (11th Cir. 2007).

Here, the Kesslers did not plausibly show they were treated differently from others similarly situated, without a rational basis. They contend that they should be compared to the other leaseholders at the marina who have not had their leases terminated, but "we have emphasized that plaintiffs are not permitted simply to rely on broad generalities in identifying a comparator." *Id.* at 1204. And they do not identify any comparator with even broadly similar facts beyond the mere fact of a code violation. While they assert they were not required to identify a comparator at the motion-to-dismiss stage, citing our decision in *Ward v. Downtown Development Authority*, 786 F.2d 1526, 1532 (11th Cir. 1986), *Ward* was decided under the more lenient, and now overruled, "no set of facts" standard for evaluating motions to dismiss. *See id.* at 1528. Applying the current plausibility standard, we must affirm the dismissal of the Kesslers' equal-protection claim. The Kesslers' adamant belief that the City's actions were unprecedented and that

them differently because they are Jewish, and they fail to identify membership in any other protected class.

21-11069              Opinion of the Court                    13

they were treated unfairly is not, on its own, enough to plausibly establish a violation of their equal-protection rights.

### D.  Takings Claim

Next, we consider the Kesslers' takings claim.  The Fifth Amendment's Takings Clause, as applied to the states through the Fourteenth Amendment, prohibits governments from seizing private property for public use without providing just compensation. Until recently, a property owner bringing a takings claim in federal court under § 1983 had to allege "either that the state law provides him no process for obtaining just compensation (such as an action for inverse condemnation) or that the state law appears to provide such process, but due to state court interpretation, the process is inadequate." *Agripost, Inc. v. Miami-Dade Cnty.*, 195 F.3d 1225, 1231 (11th Cir. 1999).  That requirement stemmed from the Supreme Court's decision in *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985), which held that a takings claim is not ripe until the state refuses to provide compensation for a taking through available processes.  *See id.* at 194–95.

In 2019, however, the Supreme Court overruled *Williamson County*'s state-litigation requirement, holding that "a property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." *Knick v. Twp. of Scott, Penn.*, 588 U.S. __, 139 S. Ct. 2162, 2168 (2019).  In other words, the "right to full compensation arises at the

time of the taking, regardless of post-taking remedies that may be available to the property owner." *Id.* at 2170.

Here, the district court erred in applying the now-overruled state-litigation requirement from *Williamson County*. As *Knick* makes clear, the Kesslers did not need to pursue post-taking remedies in state court before filing suit in federal court under § 1983. So the court should not have dismissed their takings claim on that ground.

The City contends that we can affirm on alternative grounds, but we decline to do so. In the City's view, the Kesslers lacked a property interest in their lease once the City exercised its contractual right to terminate the tenancy at will, and any claim against the City would be for breach of contract, not a taking. We would prefer the district court address these issues in the first instance.

A person's claim to "property" can be secured by "such rules or mutually explicit understandings that support his claim of entitlement," including a written contract. *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). Moreover, in *Ward*, we held that "a month-to-month tenancy at will is a compensable property interest under Florida law," which may continue in certain circumstances despite a state landlord giving "legally sufficient notice to vacate." *Ward*, 786 F.2d at 1528–29.

In asserting that the City took their property interest in continuing to remain in the boat slip or transferring the lease, the

Kesslers point not only to their lease agreement, which contemplated review of the City's lease-termination decision by a neutral board of citizens. But also they allege that the City collected 5% of private lease transfers and that other "interlocal agreements" and court settlements recognize and protect the lessees' rights. These allegations lend some credence to their claim that more than mere notice was required to terminate a lease at the marina and that their property interest was grounded in more than just the lease agreement. While the allegations ultimately may not be sufficient to state a plausible takings claim—we express and imply no opinion on the matter—we cannot say that remand for the district court to address these issues in the first instance would be futile.

Accordingly, we vacate the district court's dismissal of the Kesslers' takings claim and remand for further proceedings consistent with this opinion.

### E. Injunctive Relief

Finally, we affirm the denial of preliminary injunctive relief. An injunction would not prevent any imminent harm to the Kesslers, as their lease has already been terminated and another tenant occupies the boat slip, and their injuries can be remedied through monetary damages. *See Siegel*, 234 F.3d at 1176 (stating that a plaintiff must show that "irreparable injury will be suffered unless the injunction issues"); *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) ("[E]conomic losses alone do not justify a preliminary injunction.").

## IV.

In sum, we affirm the dismissal of the Kesslers' procedural-due-process, substantive-due-process, and equal-protection claims for failure to state a plausible claim to relief, and we affirm the denial of preliminary injunctive relief.  We vacate the dismissal of the takings claim and remand for further proceedings.

**AFFIRMED in part; VACATED and REMANDED in part.**